JOAB L. CLIFT, as Survivor, etc., Respondent, *v.* LUCIUS MOSES et al., Appellants.

In an action by plaintiff, as surviving partner of the banking firm of C. P. & Co., upon certain promissory notes, which were not produced on trial, the defense was payment. It appeared that the notes at their date were discounted by and became the property of said firm, and were placed in a safe where its other securities were kept; that M., one of the makers of the notes, lived in the family of P., plaintiff's deceased partner; that the latter, who was the managing partner, occupied an office opening into the banking room, where he superintended the affairs of the bank and transacted his private business, in which office he had a safe for his private papers. The notes were subsequently taken by P. to Wisconsin where a suit was brought thereon in the name of himself and his partner against the makers to reach property of D., the other maker, which suit was discontinued by P., but the notes were not returned by him to the custody of the firm. Nothing appeared upon the books of the bank showing payment, satisfaction or discharge of the notes, or that it had parted with possession. P., about two weeks before his death, exhibited notes to a witness, and from his description thereof it might be inferred that they were the notes in suit. Plaintiff testified that, after the death of P., defendant M., one of the makers of the notes, had the key to P.'s private safe and opened it on one or more occasions before

the appointment of an administrator.   Both the bank and P. were insolvent at the time of the death of the latter, and this was known to M. *Held*, that the evidence sufficiently explained and accounted for the nonproduction of the notes to put defendant on his defense, and that a motion for a nonsuit was properly denied.

The wife of M. was called as a witness for the defense and testified, in substance, that, after the return of P. from Wisconsin, he transferred the notes to M. in exchange for an interest in certain property, that M. delivered them to her and she destroyed them.   Thereafter, M., as a witness in his own behalf, was asked as to the possession of the notes by himself and wife prior to the death of P.   *Held*, that the evidence was properly excluded under the Code of Civil Procedure (§ 829); that it was "concerning a personal transaction or communication" between M. and the deceased; and that it was not made admissible by the examination of plaintiff as a witness, as he was not examined "concerning the same transaction or communication."

Said Code not only prohibits direct testimony of the survivor that a personal transaction did or did not take place, but also prohibits his testifying to what, on its face, may seem an independent fact, when it appears by other evidence that it had its origin in or directly resulted from a personal transaction, he may not testify to subsidiary facts which originated in or proceeded from such a transaction.

*Pinney* v. *Orth* (88 N. Y. 451); *Lewis* v. *Merritt* (98 id. 206) distinguished.

On cross-examination of plaintiff's witness, who testified that P. exhibited the notes to him, defendant proved certain declarations of P. on that occasion.   On redirect-examination the witness was questioned, and was permitted to answer, under objection and exception, as to what·P. said about the notes at that time.   *Held*, no error; that it was competent for the plaintiff to prove the whole conversation in relation to the notes, a part of which had been called out by defendant, and if the answer went beyond this, the remedy of the latter was, by motion, to strike out.

The testimony upon which defendant relied to establish the defense of payment tended to establish a transfer by M. to P., individually, of an interest in certain property in exchange for the notes, without the knowledge of plaintiff, and in fraud of the partnership, and that defendant had knowledge that P. was acting for himself and not for the firm. *Held*, that the transaction was beyond the scope of P.'s power as a partner and did not, as to the firm, operate as a payment, and plaintiff, as survivor of the firm, could maintain the action.

*Sweet* v. *Morrison* (103 N. Y. 235) distinguished.

(Argued December 20, 1888 ; decided March 5, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order

made April 20, 1886, which affirmed a judgment in favor of plaintiff entered upon a verdict. (Reported below, 44 Hun, 312.)

This action was brought by plaintiff, as survivor of the firm of C. Pardee & Co., upon four promissory notes made by the firm of Dodge & Moses, composed of defendants. Defendant Moses, who alone appeared and answered, among other things, alleged payment of the notes.

The facts, so far as material, are stated in the opinion.

*Louis Marshall* for appellants. The evidence given by the plaintiff, when viewed in connection with that given by the defendant, fails to account for the non-production by the plaintiff of the notes in suit, and the motion for a nonsuit upon that ground should have been granted. (Lawson on Pre. Ev. 30; C. & H. note to Phillips on Ev note 192; 1 Greenl. on Ev. § 38; *Baring* v. *Clark*, 19 Pick. 220; *McGee* v. *Prouty*, 9 Metc. 547; *Heald* v. *Davis*, 11 Cush. 318; *Richardson* v. *Cambridge*, 2 Allen, 118; *Cole* v. *Ger. F Ins.*, 99 N. Y. 42; *Baird* v. *Mayor, etc.*, 96 id. 592; *Shultz* v. *Hoagland*, 85 id. 467.) The prohibition of section 829 of the Code of Civil Procedure does not apply where the representative of the deceased is examined in his own behalf, or where the testimony of the deceased is given in evidence concerning the same transaction or communication. (*Potts* v. *Mayor, etc.*, 36 N. Y. 302; *Wadsworth* v. *Heermans*, 85 id. 639 · *Lewis* v. *Merritt*, 98 id. 206.) It was competent for the defendant, by testifying to extraneous facts, to controvert the defendant's testimony, although, by so doing, he might inferentially affirm or negative the occurrence or non-occurrence of a personal transaction or communication with the deceased. (*Wadsworth* v. *Heermans*, 85 N. Y. 639; *Pinney* v. *Orth*, 88 id. 447; *Lewis* v. *Merritt*, 98 id. 206; *Holcomb* v. *Holcomb*, 95 id. 325; *Smith* v. *Sargent*, 61 Barb. 243.) Where a statement forming a part of a conversation is given in evidence, whatever was said by the same person in the same conversation that would in any way qualify or explain that statement is also admissible, but detached and independent

statements in no way connected with the statement given in evidence are not admissible. (*Prince* v. *Samo*, 7 A. & E. 627; *Platner* v. *Platner*, 78 N. Y. 90, 103; *People* v. *Cox*, 21 Hun, 47; 83 N. Y. 610; *People* v. *Beach*, 87 id. 512.) A surviving partner cannot, in an action of law, disaffirm the acts of his copartner, who had the right of disposition over the firm assets and the power of adjusting, compromising and discharging the debts due the firm, and this is especially the case where the firm, as in the present case, receives the proceeds of the settlement. (1 Bates on Partnership, §§ 381, 383; *Heartt* v. *Walsh*, 75 Ill. 200; *Trustees* v. *Lawrence*, 3 M. & P. 555; *Hogarth* v. *Wherley*, L. R., 10 C. P. 630; *Chapin* v. *Clemitson*, 1 Barb. 311; *Brown* v. *Lawrence*, 5 Conn. 597; *Noyes* v. *N. H., etc., R. R. Co.*, 30 id. 1; *Pierson* v. *Hooker*, 3 Johns. 70; *Wells* v. *Evans*, 20 Wend. 251; *Cunningham* v. *Littlefield*, 1 Edw. Ch. 104; *Arnold* v. *Brown*, 24 Pick. 89; *Williams* v. *Brimhall*, 13 Gray, 462; *Everet* v. *Strong*, 5 Hill, 163; 7 id. 585; *Huntington* v. *Potter*, 32 Barb. 300; *Sweet* v. *Morrison*, 103 N. Y. 235.) Even if this were an action in equity, there could be no recovery upon the theory of fraud, based upon the fact of knowledge by the defendant of Pardee's insolvency, and the inadequacy of the value of the property transferred compared with the amount of debts satisfied. (*Jaegar* v. *Kelly*, 52 N. Y. 274.)

*William G. Tracy* for respondent. The fact that plaintiff testifies to a personal transaction with defendant after the death of the deceased does not authorize the latter to testify to a personal transaction with the deceased in his lifetime. (*Lewis* v. *Merritt*, 98 N. Y. 206; *Ward* v. *Plato*, 23 Hun, 402.) Because Dodge, in consequence of his cross-examination, was allowed to testify to declarations of Pardee tending to show he held the notes and they had not been paid, the defendant did not become competent to testify to a fact tending to prove that such declarations, if made, were false. (*Pinney* v. *Orth*, 88 N. Y. 447; *Wadsworth* v. *Heermans*, 85 id. 639; *Denise* v. *Denise*, 41 Hun, 9; *Bank* v. *Leach*,

37 id. 336; *McKenna* v. *Bolger*, Id. 526; *Taber* v. *Willetts*, 44 id. 346.) A party cannot testify to a fact, the direct and ordinary result of the personal transaction with a deceased person, claimed by him to have taken place, for the purpose of establishing an affirmative cause of action or defense against the representative of such deceased person. ( *Viall* v. *Leavins*, 39 Hun, 291; *Pease* v. *Barnett*, 30 id. 525.) The primary intention of the prohibition of section 829 of the Code is to prevent a surviving party from proving, by his own testimony, a personal transaction or communication between himself and a deceased person, which, but for the prohibition, he might do without fear or possibility of contradiction. (*Pinney* v. *Orth*, 88 N. Y. 447; *Maverick* v. *Marvel*, 90 id. 656; *Jacques* v. *Elmore*, 7 Hun, 675; *Grey* v. *Grey*, 47 N. Y. 552; *Church* v. *Howard*, 79 id. 415.) The denial of any interest in the note might have been controverted by the intestate if he was alive, as well as the statement that he paid no interest or directed payment of any. (*Waver* v. *Waver*, 15 Hun, 277; *Tooley* v. *Bacon*, 70 N. Y. 24; *Fisher* v. *Ver Planck*, 17 Hun, 150; *Freeman* v. *Lawrence*, 43 Sup. Ct.R. 288; *Clark* v. *Smith*, 46 Barb. 30; *Dyer* v. *Dyer*, 48 id. 190; *Stanley* v. *Whitney*, 47 id. 586; *Johnson* v. *Spies*, 5 Hun, 468; *Dubois* v. *Baker*, 30 N. Y. 355; *Barrett* v. *Carter*, 3 Lans. 68; *Strong* v. *Dean*, 55 Barb. 337.) The fact that Pardee was in possession of the notes a week before his decease, claiming to own them, and that defendant Moses had access to his books and papers, was sufficient to account for the non-production of the notes. (*Grey* v. *Grey*, 47 N. Y. 552; *Lewis* v. *Merritt*, 98 id. 206.) The plaintiff, as surviving partner of C. Pardee & Co., was entitled to maintain this action. (*Clift* v. *Barrow*, 108 N. Y. 187.) The effects of a copartnership cannot be applied by one partner to the payment of his private debt without the consent of his copartner, and the title is not vested in such separate creditor, although he was ignorant of the fact that the property belonged to the firm. (*Geerey* v. *Cockroft*, 33 Super. Ct. 146; *Dobb* v. *Halsey*, 16 Johns. 38; *Rogers* v. *Batchelor*, 12 Peters, 221; *Bendel* v. *Hettrick*, 35 Super. Ct.

405; *Green* v. *Caldwell*, 5 Cow. 489; 1 Lindley on Part. 146; *Barker* v. *Richardson*, 1 T. & J. 362; *Grey* v. *Grey*, 47 N. Y. 552; *Kinney* v. *Pub. Admr.*, 2 Brad. 319.) Where a part of a conversation is drawn out upon the cross-examination of a witness, the party calling him is entitled to give the whole conversation where it tends to explain or qualify the statements made by the witness upon the cross-examination, or relates to the part put in evidence by such cross-examination. (*Rouse* v. *Whitehead*, 25 N. Y. 170; *R. P. Ins. Co.* v. *Warner*, 1 W. D. 204; *Misselbeck* v. *Greime*, 2 T. & C. 660; *Platner* v. *Platner*, 78 N. Y. 90; *Babcock* v. *People*, 15 Hun, 347; *Grattan* v. *Met. Ins Co.*, 92 N. Y. 274.)

ANDREWS, J.    It was incumbent on the plaintiff to account for the non-production of the notes, to rebut the presumption that they had been transferred, or had been paid or discharged, which, in the absence of explanation, would arise from their non-possession by the plaintiff.    It is a conceded fact that the notes were discounted by and belonged to the banking firm of C. Pardee & Co., at their date, November 10, 1874, of which firm, by the death of Charles Pardee in 1878, the plaintiff became the surviving partner.    The defendant Moses, of the firm of Dodge & Moses, makers of the notes, had married the adopted daughter of Pardee, and with his wife, lived in Pardee's family in Skaneateles, where the banking business of C. Pardee & Co. was carried on.    Pardee was eighty years old at his death, and a widower, having no children.    The notes, at the time they were discounted, were entered in the books of C. Pardee & Co. as the property of the firm, and were placed in a safe in the banking-room of the firm, in which its other securities were kept.    Pardee, who was the managing partner, occupied an office opening into the banking-room, where he superintended the affairs of the bank and transacted his private business, in which office he had a safe in which he kept his private papers.    The notes were taken by Pardee, in 1874 or 1875, to Wisconsin, where a suit was brought upon them in the name of Pardee and Clift

against the makers, but was discontinued, in August, 1875. The suit was instituted for the purpose of ultimately acquiring the interest of Dodge (the co-maker with Moses, of the notes), in certain dredges owned by Dodge & Moses, and was discontinued on the purchase of this interest by Pardee in another proceeding. The notes were never returned by Pardee to the usual custody of the firm of C. Pardee & Co. They were never paid to the bank, so far as appears from the books, nor is there any entry in the books of the firm showing that the bank had parted with their possession, nor any trace that the debt represented by them had been in any way satisfied or discharged. . One Rensselaer R. Dodge, a witness for the plaintiff, testified that about two weeks before Pardee's death the latter exhibited certain notes to the witness, which, from the description, the jury might infer were the notes in question, and that they were then uncanceled. The plaintiff Clift testified, in substance, that after the death of Pardee, the defendant Moses had the key to the private safe of Pardee, and opened it on one or more occasions in his presence, before the appointment of an administrator of Pardee's estate, which was not made until four months after his death. The plaintiff Clift, the partner of Pardee in the banking business, was a farmer, residing in the county of Cayuga, and took no part in the management of the bank and had very little knowledge of the bank transactions. Both the bank and Pardee individually were insolvent at the time of his death, and the proof tends to show that Pardee had been insolvent for several years, and that this was known to the defendant Moses. Clift was individually solvent. Dodge, the co-maker with Moses of the notes, had failed. There is no proof as to the pecuniary ability of Moses. The answer of Moses sets up the defense of payment, and the fact that Moses had possession of the notes after Pardee's death was proved by his own witnesses. We think the plaintiff so far explained and accounted for the non-production of the notes as to put the defendant on his defense (*Grey* v. *Grey*, 47 N. Y. 554), and

the motion for nonsuit on the ground that the plaintiff had not made a case for the jury was properly overruled.

The other exceptions relate to rulings upon evidence and to the charge. The defendant Moses was called as a witness in his own behalf. His counsel propounded to him a series of interrogatories touching the possession of the notes prior to Pardee's death. These questions were objected to by the plaintiff's counsel and excluded by the court under section 829 of the Code. A brief statement of the situation, when these questions were asked and the rulings excepted to made, will be useful in understanding the point presented. When the plaintiff rested the defendant called as his first witness, his wife, Mrs. Moses, and her testimony developed the facts upon which the defendant relied to sustain the defense of payment. The evidence of Mrs. Moses, in short was that in the fall of 1875, on the return of Mr. Pardee from Wisconsin, her father (Mr. Pardee) informed her that he had about come to an arrangement with her husband to give him the Dodge & Moses notes in exchange for his interest in the dredge property, and that " when he sold the dredges, if he made anything, he would divide with Mr. Moses;" that shortly afterwards Mr. Pardee brought the notes one evening (to the house) and in her presence handed them to Mr. Moses and told him to take good care of them as he might need them when he came to make a settlement with the Dodges; and that her husband handed the notes to her and she put them away; and she testified, substantially, that she retained them in her possession until she destroyed them in 1879, after Mr. Pardee's death, except that she testified that on one occasion Mr. Pardee borrowed them to use in a litigation with one of the Dodges. The theory of the defense, therefore, as developed by the testimony of Mrs. Moses was, that the notes were paid by the transfer by Moses to Pardee of his interest in the dredge property, and that they were delivered up to him by Pardee in consideration of such transfer. The defendant Moses was called as a witness

in his own behalf immediately after the conclusion of his wife's testimony. He was first interrogated directly as to transactions between himself and Mr. Pardee, and the questions were excluded and the correctness of those rulings is not now assailed. These were followed by a series of questions put in a great variety of forms, of which the following are samples: "Have you ever had the notes in suit in your possession?" "Did you see the notes in suit in November or December, 1875?" "Did you ever see the notes in the possession of your wife when Mr. Pardee was not present or in your wife's hands when Mr. Pardee was not present?"

The questions were objected to as inadmissible under section 829 of the Code, and were, we think, properly excluded. The plaintiff was the survivor of a deceased person within section 829. (*Green* v. *Edick*, 56 N. Y. 613.) The defendant Moses could not, therefore, be examined as a witness in his own behalf or interest, "concerning a personal transaction or communication," between himself and Pardee, unless the plaintiff had been examined in his own interest "concerning the same transaction or communication." (§ 829.) The primary question is whether the evidence sought to be elicited by the questions put to Moses, touching the possession of the notes prior to Pardee's death, was evidence concerning a personal transaction between the witness and Pardee. The evidence was very material upon the issue of payment. If the notes were in the possession of Moses prior to Pardee's death, the presumption of payment would be very strong, and if he saw them in the possession of his wife in 1875 or 1876, or subsequently during Pardee's lifetime, it would be a strong circumstance in corroboration of her testimony. The questions do not on their face call for a disclosure of a personal transaction of the witness with Pardee; and if it be the true construction of section 829, that a party may be a witness against the representative of a deceased party as to any fact which is not a narrative of an occurrence between the witness and the deceased, or if any fact may be proved by the survivor which does not involve on its face a direct statement of a transaction

or communication between himself and the deceased, then the evidence of Moses was improperly excluded. But this literal construction of the section has not been adopted by the courts. It has been held with general uniformity that the section prohibits not only direct testimony of the survivor that a personal transaction did or did not take place, and what did or did not occur between the parties, but also every attempt by indirection to prove the same thing, as by negativing the doing of a particular thing by any other person than the deceased, or by disconnecting a particular fact from its surroundings and permitting the survivor to testify to what on its face may seem an independent fact, when in truth it had its origin in or directly resulted from a personal transaction.

It is too broad a statement that where the ultimate fact cannot be proved under this section by a witness, he cannot testify to any of a series of facts from which the ultimate fact may be inferred; but if there is introduced into this statement the qualification that he cannot testify as to any of the particular facts, which originated in a personal transaction with the deceased, or which proceeded from such transaction as a cause, the statement so qualified may be substantially correct. Reference to a few of the decided cases will illustrate the general rule of construction to which we have adverted. In *Grey* v. *Grey* (*supra*), the action was by an administrator on a note made by the son of the intestate, the defendant in the action. The note was in possession of the son, who claimed that it had been delivered to him by his father before his death, and he was permitted to prove this by his own testimony, under objection, and also to testify that he received it from no one else. The court held that the objection was well taken; PECKHAM, J., saying: " The witness was incompetent to testify that he received it from his father. If he could not testify to that directly, he was equally incompetent to prove it indirectly by stating, in substance, that he received it from no one else." In *Koehler* v. *Adler* (91 N. Y. 657), the question was whether a check given by the plaintiff to the defendant's intestate was a personal transaction between

them, or a transaction in which the plaintiff acted for the Stonewall Oil Company. The plaintiff offered himself as a witness on the trial, and was asked by his counsel whether the check had anything to do with the affairs of the oil company. The question was objected to under section 829, and excluded. This court sustained the ruling, on the ground that it was an indirect attempt to show that the check was a personal transaction between the plaintiff and the intestate.

*Lerche* v. *Brasher* (104 N. Y. 157), was an action to recover for services rendered by the plaintiff for the defendant's intestate. The court held that the plaintiff was competent to testify to certain acts which did not, in themselves, create any inference of a personal transaction with the deceased, but said, "If the employment or request in any manner or to any extent rested upon an inference drawn from the character of the acts done, the evidence would be incompetent." Many cases will be found in the Supreme Court proceeding, upon the same construction, viz., that the statute covers indirect as well as direct evidence of personal transactions or communications.

The possession by the defendant, or by his wife, of the notes prior to the death of Pardee, was a material fact on the main issue of the case. Possession of a thing derived from another is, of course, a personal transaction with the person from whom the possession was derived. Proof by Moses that he had possession of the notes prior to Pardee's death did not, of itself, necessarily show a possession derived from Pardee. In the absence of explanation, this possession may have been derived from Clift or from some third person to whom the notes had been transferred by Pardee & Co. But before Moses was called as a witness, he had proved by his wife that his possession came from Pardee through a direct personal transaction between Pardee and himself. To permit Moses to testify to his possession of the notes prior to Pardee's death, or that he saw them in his wife's hands, was equivalent, under the circumstances, to permitting him to testify that he received the notes from Pardee; and as he could not be per-

mitted to testify directly to that fact, he was equally incompetent to testify to a possession which was the inseparable incident and result of a personal transaction. The statute cannot be evaded by framing a question which, on its face, relates to an independent fact, when it is disclosed by other evidence that the fact had its origin in and directly resulted from a personal transaction.

But the statute permits the survivor to testify to a personal transaction or communication with a deceased person, when the party bringing the action as his representative or survivor is examined in his own behalf concerning the same transaction or communication; and it is claimed that the testimony of Clift to the effect that after Pardee's death the defendant Moses had access to his safe and papers, and on one or more occasion opened the safe prior to the appointment of an administrator, opened the door to the proof offered. This view is not tenable. The testimony of Clift did not relate to any personal transaction with Pardee. The facts testified to by him related to facts and conditions existing after the death of Pardee. The fact that Moses had access to the safe after Pardee's death, joined with the facts proved by the other witnesses for the plaintiff, were together, as was claimed by the plaintiff, sufficient to justify an inference that the notes were in the safe at the death of Pardee and were taken therefrom by the defendant. The defendant Moses was permitted to testify that he did not take the notes from the safe and to be examined fully on that point. But he could not be permitted to testify that he had possession of the notes from Pardee before his death, or, in other words, to prove a personal transaction with him, to rebut a possible inference arising from all the facts going to make up the plaintiff's case, that the notes were outstanding and unpaid at Pardee's death and were then in his safe. The evidence was not admissible on the ground that the plaintiff had opened the way to such evidence, because the plaintiff's evidence did not relate to any personal transaction at all. Nor was it admissible in contradiction of the plaintiff's evidence, because the substantial and material

part of the plaintiff's testimony, viz., that Moses had the key of the safe after Pardee's death, and opened the safe before the appointment of an administrator, was admitted by Moses, although there is some discrepancy as to details. And finally the evidence of Clift did not even inferentially show a personal transaction with Pardee. Of itself, independently of the other facts proved, the possession of the key of the safe by Moses, by which he could and did obtain access to it, had no significance. It was only from its association with other facts that it had any importance. Because there arises from a group of independent and separable facts an inference that a personal transaction did or did not take place between the survivor and the deceased, this is no reason for permitting the survivor to rebut such inference by his testimony that he had or did not have a personal transaction with the deceased, which was inconsistent with such inference.

The appellant's counsel relies on the cases of *Pinney* v. *Orth* (88 N. Y. 451) and *Lewis* v. *Merritt* (98 id. 206). Both of these cases involved the question, how far it is permissible to a survivor of two persons to testify to facts which may inferentially disclose the existence or non-existence of a personal transaction with the deceased, where the evidence is offered, not to establish affirmatively a cause of action or a defense, but merely and only to contradict some fact testified to by a witness on the other side. It was held in *Pinney* v. *Orth* that the prohibition of section 829 " did not preclude the survivor from testifying to extraneous facts and circumstances which tend to show that a witness who has testified affirmatively to such (personal) transaction or communication, has testified falsely," and, consequently, that the survivor might testify that a witness on the other side was never present at any interview between the survivor and the deceased person, as he had testified, thereby inferentially negativing the existence of any conversation such as was related by that witness. But the court confined the range of permissible contradiction within narrow limits, and expressly held that it could not be extended to include testimony by the survivor

of what was or was not said between the parties at a conversation sworn to by a witness on the other side, although the evidence was offered to contradict his narration of the transaction. The decision in *Lewis* v. *Merritt* was based on *Pinney* v. *Orth*. The executor who brought the action in that case testified, as a witness in his own behalf, that certain notes were seen by him in a box in the room of the testator, the morning before her death, and were not in the box immediately thereafter; that the defendant was in the room where the notes were kept during the day preceding the testator's death, and had the opportunity to take the notes from the box without authority. The trial court refused to permit the defendant to answer the question, " whether you took the notes from any trunk or any person," and also to show by his own testimony that at the time of a conversation two days before the testator's death, in her presence " he had possession of the notes." It was held that this evidence should have been admitted in contradiction of the facts testified to by the executor. It was plainly competent for the defendant to testify that he did not take the notes from the box, and thereby rebut the inference that he wrongfully abstracted them therefrom, sought to be raised by the testimony of the executor. The testimony as tc the prior possession is much nearer the border line, but the court considered it admissible. It tended directly to contradict the affirmative testimony of the executor that he saw the notes in the trunk the day before the intestate's death. The testimony might furnish an inference on the main issue, viz., whether the intestate gave the notes to the defendant, but, as stated in the opinion, it was not offered for the purpose of establishing an affirmative defense. These cases do not justify the evidence offered in the case now before us. The plaintiff Clift had opened no personal transaction by his testimony. The facts sworn to by him were substantially admitted. The proof offered bore upon the very issue in the case, and was, we think, though not in form, an offer to prove possession derived through a personal transaction with Pardee.

Nor was the evidence admissible to contradict the evidence of Rensselaer R. Dodge. It was not offered for this purpose. There was no suggestion that the defendant intended or sought to prove a possession in him or his wife at the time testified to by Dodge; and Dodge's testimony that, at some time after the alleged surrender of the notes to Moses, he saw them in Pardee's possession, is confirmed by the testimony of Mrs. Moses, that after that time Pardee borrowed them to use in a litigation with Dodge. The question, "At the time of the sale to Williams and Upham in 1877, did you own any interest in these dredges?" was also properly excluded as an attempt indirectly to prove a personal transaction between himself and Pardee, as it had already been shown by Mrs. Moses that her husband transferred his interest in the dredges to Pardee in 1875 in satisfaction of the notes.

The exception to permitting the plaintiff, on the re-examination of Rensselaer R. Dodge, to ask the question, "At the time Mr. Pardee showed you these notes in 1878, what did he say about them?" was not, we think, well taken. The defendant on his cross-examination of this witness proved by him certain declarations of Pardee, made on the occasion of Pardee's exhibiting the notes to him, and negatively, that Pardee did not say whether they had been canceled or not, and that Pardee did not tell the witness what the notes were. This examination was evidently directed to the point of identity between the notes exhibited to Pardee at that time and the notes in suit. It was competent for the plaintiff on the re-examination of his witness to show the whole conversation, a part of which had been called out by the defendant, bearing upon the question of identity, and this was the fair construction and scope of the inquiry. If the answer went beyond this, the remedy of the defendant was by motion to strike out the irrelevant portion of the answer, which was not made.

The court was requested by the defendant's counsel to charge "that if the defendant Moses transferred his interest in the dredging property, and it was accepted in satisfaction of

the notes in suit, such transfer operates as a payment of the notes, and the plaintiff cannot recover." The court replied: "I so charge, adding to it, however, the modification that I gave you before in relation to any intended fraud or any fraud against the copartnership creditors based upon the knowledge that the property transferred was grossly inadequate compared with the amount of the debts satisfied, and having knowledge of the fact that Charles Pardee was at the time insolvent, or (and) if he was not insolvent, then any settlement that was made, no matter how inadequate the consideration was, the consideration would stand." The defendant's counsel excepted to the refusal to charge in the language requested and to the modification. We think the charge was quite as favorable as the defendant was entitled to. The whole evidence shows that the alleged transaction between Pardee and Moses, upon which the defendant relied, was a sale by Moses, to Pardee individually, of the former's interest in the dredge property, and a surrender by Pardee to Moses of the Dodge and Moses' notes, the property of the firm of C. Pardee & Co., in payment for the interest of Moses in the dredge property so transferred to Pardee. In other words, it was a transfer by one partner of firm property in payment for property purchased by him individually for his own use, and not for the use of the firm, without the consent of his copartner, and in fraud of the partnership, the acting partner being at the time insolvent, and the debtor of the firm, with whom the transaction was had, knowing of the insolvency, and also that the acting partner in taking title to the dredge property was dealing for himself and not for the firm. The transaction was beyond the scope of Pardee's powers as partner in the firm of C. Pardee & Co., and the transactions did not, as to the firm, operate as a payment of the notes. In 1877, Moses, as agent for Pardee under a power of attorney from Pardee individually, sold the whole dredge property for $3,000, and the proceeds went to Pardee and not to the firm. There was neither prior authority nor

subsequent ratification. The notes surrendered amounted in 1875 to about $15,000, and Moses did not own to exceed a one-half interest in the dredges at the time of the alleged transfer to Pardee in that year. That this transaction by which Pardee assumed to surrender the notes of the firm in payment for property purchased by him individually, to the knowledge of Moses, was beyond the scope of Pardee's agency for the firm, and was not binding on the firm; and that the plaintiff as survivor of the firm may maintain an action on the notes, is a conclusion justified by the authorities in this state. (*Dob* v. *Halsey*, 16 Johns. 38; *Evernghim* v. *Ensworth*, 7 Wend. 326; *Gram* v. *Cadwell*, 5 Cow. 489; see, also, *Rogers* v. *Batchelor*, 12 Pet. 221; *Purdy* v. *Powers*, 6 Barr, 492; *Williams* v. *Brimhall*, 13 Gray, 462.)

The case of *Sweet* v. *Morrison* (103 N. Y. 235) was a case of the adjustment and settlement by one partner of a partnership account with another firm, and it was held that although there may have been collusion between the adjusting partner and the debtors, the adjustment was within the general power of either partner and was binding on the firm. That case is quite different from the present one in its circumstances and the principles governing it.

We find no error in the record, and the judgment should, therefore, be affirmed.

All concur, except RUGER, Ch. J., not sitting.

Judgment affirmed.