RICHARD DE VERRY, Respondent, *v.* CLARKSON C. SCHUYLER, as Executor, etc., Appellant.

*Supreme Court, Third Department, General Term, December 11, 1889.*

1. *Evidence.    Section 829.*—In an action against an executor on a note purporting to have been given by his executor, the plaintiff is incompetent to testify that he received it originally from the testator.
2. *Same.*—This testimony is not rendered competent by the executor's testifying that testator's signature is not genuine.

Appeal from judgment in favor of plaintiff, entered upon order confirming the report of a referee and denying motion to set it aside on a case and exceptions.

*G. B. Wellington,* for appellant.

*F. J. Worcester,* for respondent.

PUTMAN, J.—This action was brought upon five notes alleged to have been made by Maria Aspinwall, deceased. One was conceded genuine by defendant and the other four were claimed to be forgeries.    On the trial plaintiff produced some evidence of the genuineness of the signature of deceased to the notes, and they were received in evidence. The defendant, Schuyler, then offered himself as a witness and testified that he was familiar with the handwriting of deceased, had often seen her write and that her signatures

to the four disputed notes were not genuine. He did not claim to have any personal knowledge of the transactions between plaintiff and the deceased, or to have been present at any interview between them, or to have any knowledge as to the delivery and possession of the notes, but his evidence merely expressed his judgment from his knowledge of the handwriting of deceased as to the genuineness of the signatures.

After defendant had rested, the plaintiff was again called as a witness, and this question was asked him : "I wish to show you the five notes in suit : from whom did you originally receive those notes ? A. Mrs. Aspinwall." This question was objected to by defendant as incompetent under § 829 of the Code, and a motion afterwards made to strike out the answer on the same ground. The objection was apparently overruled on the ground that the executor had given evidence which made it proper. The evidence so received was very important on the issues involved. If plaintiff received the notes from deceased personally, he was entitled to recover, although written by another person, and not in the handwriting of deceased.

The question clearly called for a personal transaction between the plaintiff and deceased. Clift *v.* Moses, 112 N. Y. 436 ; Grey *v.* Grey, 47 N. Y. 553–4.

Plaintiff swore to an occurrence between deceased and himself, in which she delivered the five notes in suit to him. To establish a valid promissory note plaintiff was bound to show not only the making thereof by deceased, but also a delivery to plaintiff. This evidence so given by plaintiff showed the delivery. It was evidently improper under § 829 of the Civil Code, unless the executor was himself examined concerning the same transaction, or had given some evidence justifying the reception of plaintiff's statement as to this personal transaction.

The executor was examined as one acquainted with the handwriting of deceased, and stated his judgment from his

knowledge of her handwriting that the signatures to the controverted notes were not genuine. The executor was not examined as to the transaction between plaintiff and deceased as to the delivery of the notes, or any other transaction between those parties.

In Sweet *v.* Low, 28 Hun, 432, cited by plaintiff, the action was upon a note, and plaintiffs, administrators of a deceased party, testified as witnesses that after the death of their intestate they found the note in suit among his papers. The defendant was then called and it was held proper to ask him if he ever gave such a note to deceased. It will be observed that the administrators in that case swore to the existence of the note, and the defendant was held a competent witness to deny the existence of the note. That is, to deny just the state of facts sworn to by the administrators. In Clift *v.* Moses, 112 N. Y. 426, 437, the action was by a survivor of a firm on lost notes. The plaintiff testified that after the death of his copartner, who was the manager of the copartnership business, the defendant had access to the safe and the notes could not be found, thus seeking to raise the presumption that defendant had taken them after the death of the deceased copartner. The defendant was allowed to testify that he did not take the note from the safe, but the court held he could not be permitted to testify that he had *possession of the note from deceased before* his death; or, in other words, to prove a personal transaction with deceased. In Lewis *v.* Merritt, 98 N. Y. 206, the action was by an executor to recover for the conversion of notes found in the possession of defendant. Plaintiff as a witness testified that he saw the notes in a trunk in the room of deceased the morning before she died, and on examining the trunk the day after her death, found them abstracted. It was held by the court of appeals that the defendant was a competent witness to show that he had possession of the notes two days before the death of deceased, and that he did not take such notes from any trunk or person. Such evidence clearly

controverted that given by plaintiff and was properly received under § 829 of the Code.

The distinction between the above-cited cases and other cases that might be mentioned, and the one we are considering, is plain. The defendant Schuyler swears to no transaction; he swears to nothing that took place prior to or after the death of deceased. He gives an opinion as to the signature of notes shown to him on the trial. This testimony did not relate to the transaction as to which plaintiff testified or to any personal transaction. See Simmons *v.* Havens, 101 N. Y. 433; Clift *v.* Moses, 112 Id. 437, 438; Ward *v.* Plato, 23 Hun, 402; Chadwick *v.* Fonner, 69 N. Y. 407.

It follows that the evidence in question was not admissible on the ground that defendant had opened the way to it by his testimony, as what defendant swore to did not relate to a personal transaction; and as the fact thus sworn to by plaintiff that the deceased delivered all the notes to him did not contradict anything testified to by defendant.

Hence the evidence in question was erroneously received, and as it was most important on the issues in the case, this evidence leads to a reversal of the order and judgment.

The appellant also insists that the judgment should be reversed on the merits. Excluding the testimony of De Verry, above considered, it must be conceded that the evidence establishing the genuineness of the disputed notes is quite weak. Inasmuch as, for the reasons above stated, there should be a new trial, it will not be necessary for us now to consider the merits of the case.

The order and judgment should be reversed, the referee discharged, and a new trial granted, costs to abide the event.

LEARNED, P. J., concurs.

FISH, J.—On the trial of this action, the defendant, as executor, was called as a witness in his own behalf, and was

examined as to the handwriting of the notes in question and of the signatures thereto.   Upon this the plaintiff was called, sworn and examined as a witness in his own behalf as to the transactions between himself and the testatrix, deceased.

The evidence was objected to by counsel for the defendant as inadmissible under the provisions of § 829 of the Code of Civil Procedure.   The objection was well taken, and the admission of the evidence was error, for which the judgment must be reversed.   The respondent claims that the examination of the executor as a witness in relation to the handwriting opened the door to the testimony of respondent in his own behalf, within the exception contained in said section.

The exception, properly read, is as follows : "Except where the executor   *   *   *   is examined in his own behalf *   *   *   concerning the same transaction or communication."

The plain meaning of the exception was to give the opposite party a chance to be heard, in answer to the testimony of the executor upon the point as to which the executor gave evidence.   The spirit and intent of the section is to protect a dead man's estate against claims based upon the testimony of an interested person which the deceased, if living, might controvert, and to suspend the operation of the rule only as to such transactions concerning which the executor himself is examined.

To illustrate : Suppose the executor had given evidence in this case to the effect that he saw the notes in question made and delivered to the plaintiff by a person other than the testatrix ; or that the executor drew the notes and delivered them himself in the lifetime of the testatrix.   In the case stated the plaintiff could be sworn as to the facts stated by the executor and to controvert them ; but it could not be claimed that such testimony of the executor brought the case within the exception so as to allow plaintiff to be

examined in his own behalf concerning alleged transactions between himself and the testatrix ; and to show that she delivered the notes to him. It would be a clear perversion of the letter and spirit of the statute.

This view is in harmony with divers judicial authorities.

See Ward *v.* Plato, 23 Hun, 402; Chadwick *v.* Fonner, 69 N. Y. 407 ; Pinney *v.* Orth, 88 Id. 447 ; Clift *v.* Moses, 112 Id. 426.

But, upon the merits, this recovery ought not to stand, except as to the one note of $500 made April 22, 1885. The weight of evidence is clearly against the plaintiff. His recovery rests upon very slight foundations, hardly sufficient, if uncontroverted, to justify such an inroad upon the estate, where the mouth of the alleged maker of the notes is closed.

The chief witnesses sworn in support of the claim were in close intimacy with the plaintiff, evidently interested in securing favorable results; and the case is surrounded by circumstances of doubt and suspicion. It has the usual earmarks of a manufactured claim and is not well supported.

The evidence offered by defendant tending to discredit the genuineness of the notes in question is stronger and entitled to more weight than that given by plaintiff in support of their validity. This is so, even if the plaintiff's testimony in relation to transactions with the testatrix is allowed to stand.

Suppose it shall be held that the plaintiff was properly examined in his own behalf and that his testimony should have been received for what it was worth, the question then arises as to how much reliance ought to be placed upon it.

On his direct examination he had testified very positively that the deceased in person and for sufficient consideration, gave him every one of the notes. Then followed his cross-examination, when among a good many other questions and answers he gave the following :

" Q. Did you ever hand the notes to Mrs. Flackhart?

A. No; I don't think I ever took them out of their *hiding-place;* I kept them hid away."

And in relation to the consideration of the $1,000 note:

" Q. Where did you get the money? A. I did not steal it.

" Q. Where did you get it? A. I worked for it and earned it."

And in relation to the $5,000 note :

" Q. Did you let her have $5,000 when she gave you the note? A. I did.

" Q. Did you let her have $5,000 at that time ? A. Yes, sir.

" Q. Where did you hand it to her? A. With my hand.

" Q. Where were you at the time ? A. In the house.

" Q. In what house? A. In my own house.

" Q. Where did you get the money? A. It is a hard question to answer ; I went to the bank and drew it out.

" Q. Do you remember going to the bank and drawing out $5,000 and letting her have it? A. Yes, sir."

Then follows the further cross-examination of the witness a little further on, in relation to the same note, to wit :

" Q. Did you ever give her any money for that note ? A. What note? (Note shown witness) I can't recollect; I used to go to the bank often, and sometimes she would want $100, more or less ; she opened a gentleman's boarding house in New York, and at that time, it must have been at that time, I loaned her the money."·

Then again in relation to the same note :

" Q. You can't tell anything about the amount without looking at the note? A. Well, no ; because I don't recollect; how can I recollect?

" Q. Have you any recollection of ever letting her have at one time $5,000 in cash? A. No, sir; I do not; I never kept a memorandum book ; but as far as my memory goes I could not answer that; I could not tell what time I gave the money for any of them.

" Q. You know whether you recollect it or not? A. I answer it in this way; I must have loaned her the money or she would not have given me the note."

In the continuation of his examination he stated what was probably the truth, that he had become so old that he did not recollect much of anything, and that he hardly knew whether he was dead or alive; that he had no present recollection in regard to any of the transactions, and that the only basis for his testimony was that the notes were then before him.

With this extract from the report of his testimony, it is impossible to see how any weight whatever could be given to anything he stated in aid of his action; and yet the learned referee, as appears in his opinion, allowed it to largely affect his judgment in deciding the case. Of the plaintiff as a witness, it need only be said that he was a superannuated old man who had survived his memory and who had, of modern events, only a confused and unreliable remembrance, just as likely to be wrong as right, and entirely uncertain of either; just such a person as could easily be used as a medium in the hands of his keeper to perpetrate fraud. And it may be possible that in the broken condition of his mind he had a glimmering recollection of some foul work in relation to the notes during the life-time of the testatrix, when he stated that he did not think he ever took the notes out of their hiding-place, and that he kept them hid away.

Without the testimony of the plaintiff the recovery is not sufficiently supported and ought not to stand.

The case then rests upon the testimony of the witnesses Van Antwerp, Margaret Flackhart and Thomas H. Flackhart, her husband.

A careful reading of the testimony of Mrs. Flackhart, who becomes the most prominent figure in the prosecution next to the plaintiff, makes it apparent that she either had an interest in the result of the action, or for some other cause not appearing on the surface she took a deep interest

in aid of the prosecution. Her account of the *quasi* gift of the $500 note, which she says she saw the deceased sign and deliver, may suggest the secret spring to her interest in the action.

If the plaintiff recovers it, the avails are to come to her by the arrangement with plaintiff. She, however, affords no aid to the plaintiff on the question of the genuineness of the other notes.

The witness Van Antwerp had seen the testatrix write her name twice, once about twenty years before this trial when she signed a will, and the other time more than twenty years ago ; and he had a long time ago received a letter or two from the testatrix, and had seen what he supposed to be her handwriting before that time. His opinion of the handwriting and of the genuineness of the notes may be regarded as a shadow in aid of the affirmative; scarcely, indeed, more than that. His testimony to the effect that, according to the best of his knowledge and belief, the signature to the notes were in the hand of Mrs. Aspinwall, was barely admissible. The learned referee was clearly right in holding that more evidence than Van Antwerp's was necessary.

The witness Thos. Flackhart, had seen Mrs. Aspinwall write. It does not appear that he had ever seen her write her name. The only writing he could describe was a memorandum of articles she wanted him to purchase for her ; and he states generally that he had seen her write at other times, without being able to specify. It may be said that he was sufficiently instructed to make him competent to speak of her handwriting, and give his opinion that the signatures to the notes were in the handwriting of the testatrix. He hesitated at first as to the undisputed note of April 22, 1885, but finally settled down to an opinion in favor of the genuineness of them all.

This witness is the husband of Margaret Flackhart, and evidently has a strong leaning in favor of the plaintiff. The plaintiff is a part of his family, and has intimate relations

with him ; and the fact appears that he has been sued by the defendant as executor upon notes held by the executor as part of the Aspinwall estate.

The testimony of those witnesses constitutes all there is of the plaintiff's case upon the question of the genuineness of the four disputed notes. If it may be conceded that there is enough of it standing alone, uncontroverted or unchallenged, to sustain a recovery, it must also be admitted that it needs a most generous leaning in that direction. Here is an action upon five several promissory notes, each for a considerable sum, in the aggregate for a large sum, all bearing modern dates, against an aged female, who depended largely upon others to take care of her pecuniary affairs, and to sustain which, with the exception of the one $500 note, no evidence whatever could be produced as to the considerations or transactions out of which they arose, or tending to show any consideration ; not even that the deceased testatrix had any occasion for the borrowing of the money, or that plaintiff had money to lend ; and which notes had been kept hid away by plaintiff and a secret during the maker's lifetime ; the plaintiff's case resting solely upon this weak proof of handwriting by two witnesses, whose anxieties were clearly with the plaintiff. I am not willing to affirm a recovery upon the plaintiff's case alone.

I think the weight of evidence introduced by the defendant more than overcomes and crushes out all there is of the plaintiff's case, and makes a just recovery upon the merits impossible.

Mr. Schuyler, the executor, although with strong leaning, has no personal interest in the result. He was very familiar with the handwriting of the testatrix, and he denounces each of the notes as fiction, except the one for $500, before referred to.

His opinion is fortified by aids which did not come to the plaintiff's witnesses ; and his conclusion is largely corroborated by the testimony of experts, Ames and Hogan. As

far as such evidence can reach the eye of the members of this court, the photographs of the four disputed notes, by comparison with that of the one which is undisputed, aided the same conclusion.

Upon the whole case, therefore, and upon the merits, the judgment should be reversed.

Order and judgment reversed, referee discharged and a new trial granted, costs to abide event.

---

### NOTE ON "EXCEPTION IN SECTION 829 OF THE CODE."

A disqualified party may testify to the same conversation as the adverse party, though the latter was incompetent. Sidway *v*. Sidway, 54 Hun, 634.

Proof of admissions of a party as to transactions with the decedent does not open the door to his testimony as to the same transaction. Brown *v*. Burgett, 61 Hun, 623.

Nor does the testimony of the adverse party to one transaction permit him to testify to an entirely different transaction. Id.

What not sufficient to relieve the survivor from the prohibition of said section. Clift *v*. Moses, 112 N. Y. 426; aff'g 41 Hun, 640.

The testimony of the adverse party as to facts and conditions existing after the decedent's death does not open the door. Id.

The plaintiff is incompetent to testify to direct or indirect admissions to him, or in his presence, of matters of account by the defendant's testator. Herrington *v*. Winn, 60 Hun, 235.

The subsequent testimony of the executrix on the same point, at the instance of the plaintiff, does not render him competent. Id.

Nor does her testimony, on cross-examination, as to the testator's then condition. Id.

The cross-examination of defendant as to the meaning of a statement in a letter written by him to plaintiff, since deceased, does not entitle him to give the conversations with deceased, which caused him to write it. Weston *v*. Reich, 55 Hun, 605.

The testimony of the executor, not to personal communication or transaction, but only to the opportunity for one, does not let in the adverse party's testimony to what the deceased said. Bowers *v*. Smith, 50 Hun, 604.

A party, under exception in § 829 of Code, is only at liberty to contradict testimony of the executor, and not to testify to independent facts to contradict inferences raised by such testimony. Lewis *v*. Merritt, 113 N. Y. 386.

Where the surviving partner testifies indirectly concerning a transaction

between his deceased partner and the defendant, the latter can testify directly concerning it. Mitchell v. Cochran, 57 Hun, 589.

The examination of an interested witness, on cross-examination by the administrator, in respect to a personal transaction with the deceased, waives incapacity, under § 829 of Code, upon the same matters. Blankman v. McQueen, 59 Hun, 625.