HENRY P. ROGERS and Others, as Executors, etc., of NATHANIEL P. ROGERS, Deceased, Respondents, *v.* FRANK I. McGUIRE, Defendant ; NATHANIEL P. ROGERS, Appellant.

*Evidence — an executor testifying to transactions with a deceased person — he does not thereby authorize his opponent to testify to an independent transaction — a will speaks from the testator's death — a provision releasing a devisee from debts speaks from its date — possession by an executor of a note made by himself to his testator.*

Under the provision of the Code of Civil Procedure (§ 829) prohibiting a party to an action from testifying in his own behalf against the executor or administrator of a deceased person, as to a personal transaction or communication with the deceased, except when the executor or administrator has testified in his own behalf in reference thereto, the exception is confined strictly to the transaction testified to by the personal representative, and the opposite party cannot be permitted to give evidence of another and independent transaction for the purpose of explaining, impairing or contradicting the testimony so given by the executor or administrator.

The general rule is that a will speaks from the date of the death of the testator, and not from its date, unless its language, by fair construction, indicates a contrary intention.

Where a will directs that no deduction shall be made from the share of any of the testator's children by reason of any sum which he has theretofore given or advanced to or for account of either of them, this provision will not be held to release a child from an indebtedness to the testator incurred subsequent to the date of the will.

*Quære,* whether moneys loaned by a father to his son can, within the language of such a provision, be regarded as a sum given or advanced.

Where certain of the executors of a will bring an action against a firm, of which a son and one of the executors of the testator is a partner, for moneys loaned by the testator to the firm, the fact that the partner has in his possession and produces upon the trial of the action a note upon which the plaintiffs seek to recover, does not, under the circumstances, alter the legal position of the plaintiffs, nor require them to show that the debt represented by the note is still unpaid.

APPEAL by the defendant, Nathaniel P. Rogers, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 8th day of May, 1895, upon the decision of the court rendered after a trial at the New York Special Term.

*Jacob F. Miller,* for the appellant.

*T. D. Kenneson,* for the respondents.

Present — VAN BRUNT, P. J., O'BRIEN and FOLLETT, JJ.

Judgment affirmed, with costs, on opinion of court below.

The opinion of the court below was as follows:
LAWRENCE, J. :

This action is brought by three of the executors of the will of Nathaniel P. Rogers, deceased, against the defendants, composing the firm of Maguire & Rogers, the defendant Nathaniel P. Rogers being also an executor of the will of his father, Nathaniel P. Rogers, deceased. It is alleged in the complaint that the testator, Nathaniel P. Rogers, at sundry times loaned to the defendants, as co-partners, divers sums of money, aggregating $50,000, which said several sums of money the defendants promised and agreed to repay to the testator; that such sums had not been paid at the time of the death of the testator, nor since, and that the same are now wholly due and owing from them. Nathaniel P. Rogers died on the 22d day of April, 1892, and his will, bearing date the 26th day of December, 1885, was admitted to probate May 24, 1892. The answer of the defendant Nathaniel P. Rogers admits that Nathaniel P. Rogers, the testator, indorsed for the firm of Maguire & Rogers, a note for $3,000, which was discounted by the Poughkeepsie National Bank; that when said note became due and payable it was renewed by another note for the same amount, indorsed by the said Nathaniel P. Rogers, which was also discounted at the said bank; that when the last-mentioned note became due and payable it was taken up by the said Nathaniel P. Rogers, deceased, and held by him. He further alleges that to secure the payment of said note, the defendants Maguire & Rogers assigned to the said Nathaniel P. Rogers, deceased, a bond for $2,971 and interest

made by Robert I. Marston to them, secured by a mortgage on lands situate in the State of Iowa; that said bond and mortgage are still held by the estate of the said Nathaniel P. Rogers, deceased, and are, as defendant is informed and believes, more than an adequate security for the payment of the said note. He denies that the said Nathaniel P. Rogers loaned to the said firm divers sums of money amounting to $50,000, or any other sum except temporary loans, which were repaid, or that they ever promised or agreed to pay to the testator said sum or any other sum except what may be implied from the payment of the aforesaid note for them. For a second defense, the defendant Nathaniel P. Rogers sets out the will of his father, Nathaniel P. Rogers, in *extenso*, and claims that, under the 13th clause thereof, the testator released him of and from all claims of every kind and nature whatsoever, and that he is indebted to the said estate in no respect whatever. By the 13th clause of his will the said testator provided as follows: " I direct that no deduction shall be made from the share of any of my children by reason of any sums which I have heretofore given or advanced to or for account of either of them," and by the 14th clause of his will he constituted and appointed his sons, Henry P. Rogers, Nathaniel P. Rogers, Jr. (the defendant), John Bard Rogers, and his son-in-law, Charles D. Fuller, to be executors of his will. In other portions of his will he had constituted them trustees of his estate, both real and personal, during the joint lives of his daughter, Elizabeth M. Rogers, and his grandson, John Shillito Rogers, with power to lease, etc., and to pay the rents, issues and profits of his real estate, from time to time, to his five children, in equal shares, naming them, etc. For a third defense, the defendant Rogers pleads the Statute of Limitations as to such of the alleged loans as were made before April 22, 1886. The answer of the defendant Maguire admits that the testator, Nathaniel P. Rogers, did advance to the defendants in this action, as co-partners under the firm name and style of Maguire & Rogers, sums of money aggregating $12,971, and alleges that payment of $2,971 of the $12,971 so advanced was secured to said Nathaniel P. Rogers by a mortgage upon certain lands in the State of Iowa; that as to the remaining $10,000 advanced by Nathaniel P. Rogers, the testator, the said claim was

subsequently transferred and delivered to the defendant Nathaniel P. Rogers as a gift from the testator to him, and he avers that the defendant Nathaniel P. Rogers claims to be the owner thereof, and has given notice to the defendant Maguire to that effect. Upon the trial it appeared that all of the amounts claimed by the plaintiffs were barred by the Statute of Limitations, save and except the sum of $1,000 claimed to have been loaned on the 12th of May, 1889; $3,000 claimed to have been loaned on the 25th of May, 1889; $4,000 claimed to have been loaned on the 19th of December, 1890, and $6,000 on the 20th of January, 1891. All of these alleged loans were made after the date of the will. It further appeared from the evidence that Maguire & Rogers delivered to the testator a bond and mortgage of one Marston as security for the first two loans; that Maguire took out a policy of insurance upon his own life, in the Equitable Life Assurance Society, and assigned the same to the testator as security for the note given for the last two loans, and all other sums were, therefore, excluded from consideration. On the trial, testimony was received from the defendant Nathaniel P. Rogers, subject to the plaintiffs' objection, to the effect that the deceased delivered to him the $10,000 note of Maguire and the policy on Maguire's life, and told him that they were a gift to him, the said defendant. I am of the opinion that such evidence should not be received, and it is, therefore, stricken out and disregarded. It was claimed by the defendants that this testimony was admissible, because the plaintiffs had themselves opened the door for its admission, first, by certain testimony of the plaintiff Henry P. Rogers, one of the executors, and secondly, by the testimony of the defendant Maguire. I do not think that this position is tenable. The rule is that, under the provision of the Code of Civil Procedure (§ 829), prohibiting a party to an action from testifying in his own behalf against the executor or administrator of a deceased person as to a personal transaction or communication with the deceased, except when the executor or administrator has testified in his own behalf in reference thereto, the exception is confined strictly to the transaction testified to by the personal representative, and that the party cannot be permitted to testify to another and independent personal transaction for the purpose of explaining, impairing or contradicting the testimony so given. (*Martin* v. *Hillen*, 142 N. Y. 140; *Clift* v. *Moses*, 112

id. 426; *De Verry* v. *Schuyler*, 8 N. Y. Supp. 221.) Henry P. Rogers, the executor, was not examined as to the giving of the notes in question, nor as to the alleged gift by the testator to the defendant Nathaniel P. Rogers of the $10,000 note and the policy of insurance upon the life of Maguire. He was asked the general question, "Do you know whether your father in his lifetime made loans to the firm of Maguire & Rogers?" And he answered, "I do." He was not asked, except as to one item, as to the time when such loans were made, nor does he seem to have testified as to any of the items mentioned in the bill of particulars, excepting the item of $3,000 of May 31, 1886, and when it was discovered that he was not speaking as to that item of his personal knowledge, the court struck out his testimony. The testimony having been stricken out and being disregarded, it cannot now be claimed as having opened the door for testimony by the defendant Rogers in respect to a personal gift from his father to him of the $10,000 note and of the policy on the life of Maguire. It is obvious, also, that the testimony of the defendant Rogers, proposed to be admitted, did not relate to the same transaction as that in regard to which his brother, the plaintiff executor, had been interrogated. Nor do I think that the plaintiffs, in placing Maguire upon the stand, elicited from him such evidence as entitled the defendant Rogers to testify as to the personal transaction between him and his father in respect to the alleged gift of the $10,000 note and the policy of insurance. That was a subsequent personal transaction between the testator and the defendant Rogers, in respect to which Maguire was not examined, and under the case of *Martin* v. *Hillen* (*supra*) the defendant Rogers was prohibited from testifying thereto. If these views are correct, the result follows that, in respect to the items of $1,000, $3,000, $4,000 and $6,000, the testator held a valid claim against the firm of Maguire & Rogers, and against the defendant Rogers individually, at the time of his decease, unless the provision of the will above set forth released the defendant Rogers from liability therefor. The general rule is, of course, that a will speaks from the date of the death of the testator, and not from its date, unless its language, by fair construction, indicates a contrary intention. It is contended by the plaintiffs that it is apparent from the will in this case that the testator, when directing that the sums which he had

given or advanced to his children should not be deducted from the share of any of them, referred to gifts or advancements existing at the date of the will, and that he did not intend that such provision should relate to any gifts or advances thereafter made. The cases of *Wetmore* v. *Parker* (52 N. Y. 450) and *Van Alstyne* v. *Van Alstyne* (28 id. 375) are relied upon by the plaintiffs in support of this interpretation of the will. In this contention I think that the plaintiffs are correct. The language of the will is, that "no deduction shall be made from the share of any of my children by reason of any sums which I have heretofore given, or advances to or for account of either of them." In *Van Alstyne* v. *Van Alstyne* (*supra*) the action was brought by the executors of the testator, against one of his sons, to recover upon two promissory notes, and the language of the will was, that the testator released his children from " any charge I have made against them or either of them." In that case there was a will and a codicil, the will being dated in 1850 and the codicil in 1855. The notes were dated respectively November 1, 1854, and April 1, 1856, and the latter note had an indorsement thereon, dated April 6, 1857, showing the payment of interest. The court held that the codicil amounted to a republication of the will, and must be held to speak in regard to the release of charges as of the time of the execution of the codicil. This would have exempted the defendant from liability upon the first note, but not upon the second ; but the court also held in that case that the words " any charge " could not be held applicable to promissory notes. Judge SELDEN, delivering the opinion of the court, says : " Words of present tense have often, though not uniformly, been held thus to limit the subject of the gift. (1 Jarman on Wills, 278, 279.) My interpretation of the present will is, that the words ' from any charge *I have made*,' show an intention on the part of the testator to limit the release to charges existing at the time when the will was executed." It seems to me that the language of the present will is even stronger than that which was the subject of construction in the case of *Van Alstyne* v. *Van Alstyne*. The testator restricts the provisions against the deduction from the share of any of his children to such sums as " I have heretofore given" or advanced, etc. I think he clearly intended by that to limit the exemption to such sums as

he had given or advanced prior to the date of the execution of his will, which was December 26, 1885. Furthermore, it may well be doubted under the decision in *Van Alstyne* v. *Van Alstyne,* whether moneys loaned can be regarded as sums given or advanced to any of his children. (See, also, *Sanford* v. *Sanford,* 61 Barb. 299.) It is claimed, however, by the defendant Nathaniel P. Rogers that, as he produced the $10,000 note and the policy upon the trial of this action, the plaintiffs cannot, upon the evidence as it stands, recover, and that the obligation rests upon the plaintiffs to show that the debt is still outstanding. Under the circumstances of this case, I do not think that this contention can be sustained. (See *Grey* v. *Grey,* 47 N. Y. 552.) I am of the opinion, therefore, that the plaintiffs are entitled to judgment in respect to the items of $1,000 of April 12, 1889; $3,000 of May 25, 1889; $4,000 of December, 19, 1890, and $6,000 January 20, 1891, with interest thereon, but that the judgment should provide that upon the payment of the $1,000 and $3,000, an assignment of the Iowa mortgage should be made by the executors of the estate to the defendants, or to such of the defendants as shall make the payment. Plaintiffs should also have their costs. Enter decision accordingly and settle on notice.