EMMA J. RICHARDSON et al., as Administrators with the Will Annexed of JOSEPH RICHARDSON, Deceased, Appellants, *v.* EMILY EMMETT, Respondent.

EVIDENCE — PERSONAL TRANSACTIONS AND COMMUNICATIONS — CODE CIV. PRO. § 829. One claiming title to certain railroad stock by gift from a deceased person in his lifetime is prohibited by section 829 of the Code of Civil Procedure from testifying, against objection, that, for a certain period during decedent's lifetime and at his residence, the certificates of such stock were in her possession, where such testimony has no materiality whatever except for the purpose of establishing a delivery of the certificates of the stock to her after they had been issued in her name by the railroad company by direction of decedent; since such testimony tends to establish such a delivery and to permit an inference as to the nature of the transaction between herself and decedent when considered in connection with the fact that he had first caused stock which he had owned and had paid for to be issued in her name by the railroad company, and under the circumstances is, in effect, testimony of both transaction and communication.

*Richardson* v. *Emmett*, 61 App. Div. 205, reversed.

(Argued March 7, 1902; decided April 8, 1902.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered June 3, 1901, affirming a judgment in favor of defendant entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*De Lancey Nicoll* for appellants. The state of the proof was such that the admission of any illegal evidence upon the issue of delivery, or the rejection of any legal evidence upon the question of intent, demands a reversal of the judgment. (*Heinemann* v. *Heard,* 62 N. Y. 448; *Conklin* v. *Conklin,* 30 Hun, 278; *Jones* v. *Perkins,* 29 App. Div. 37; *Grey* v. *Grey,* 47 N. Y. 552; *Matter of Bolin,* 136 N. Y. 177; *Shakespeare* v. *Markham,* 72 N. Y. 400; *Grymes* v. *Hone,* 49 N. Y. 17; *Young* v. *Young,* 80 N. Y. 422; *Matter of Crawford,* 113 N. Y. 560; *Roberts' Appeal,* 85 Penn. St. 84.) The learned referee committed serious violations of section 829 of the Code of Civil Procedure, to the manifest injury of the appellants. (*Matter of Crawford,* 113 N. Y. 560, 567; *Jackson* v. *T. T. S. R. Co.,* 88 N. Y. 520; *Coleman* v. *People,* 55 N. Y. 81; *Pease* v. *Smith,* 61 N. Y. 477; *People* v. *Wentworth,* 4 Crim. Rep. 207; *Morrell* v. *Peck,* 88 N. Y. 398; *Bateman* v. *N. Y. C. & H. R. R. R. Co.,* 47 Hun, 429; *Van Vechten* v. *Van Vechten,* 65 Hun, 215; *Gregory* v. *Fichtner,* 38 N. Y. S. R. 192; *Viall* v. *Leavens,* 39 Hun, 291.) The learned referee erred in refusing evidence that the decedent dealt with his other securities in a manner similar to that employed in the case of the Lackawanna stock. (*Mayer* v. *People,* 80 N. Y. 364; *People* v. *Everhardt,* 104 N. Y. 591; *Benerlien* v. *O'Leary,* 149 N. Y. 33; *O. S. S. Co.* v. *Otis,* 14 Abb. [N. C.] 388; *Costello* v. *Herbst,* 18 Misc. Rep. 176; *Kelly* v. *Campbell,* 2 Abb. Ct. App. Dec. 429; *Porter* v. *Gardner,* 60 Hun, 571; *Doty* v. *Wilson,* 47 N. Y. 580; *Lane* v. *Moore,* 151 Mass. 87; *Decker* v. *U. D. S. Inst.,* 15 App. Div. 553.)

*Howard Taylor, Origen S. Seymour* and *Henry P. Driggs* for respondent. The exceptions to the admission and rejection of testimony were not well taken. (*Simmons* v. *Havens,* 101 N. Y. 427; *O'Brien* v. *Weiler,* 140 N. Y. 286; *Mortimer* v.

*Chambers,* 63 Hun, 335; *Hamlin* v. *Stevens,* 59 App. Div. 522; *Cowan* v. *Davenport,* 30 App. Div. 130; *Taber* v. *Willets,* 44 Hun, 346; *Matter of Humfreville,* 6 App. Div. 535; *Lewis* v. *Merritt,* 98 N. Y. 206; *Pinney* v. *Orth,* 88 N. Y. 447; *Nay* v. *Carley,* 113 N. Y. 575.) The exceptions to the admission of Miss Emmett's testimony as to whether she had authorized the writing of her name on the certificates were not well taken. (*Pollock* v. *Nat. Bank,* 7 N. Y. 274; *Lerche* v. *Brasher,* 104 N. Y. 157; *Gawtry* v. *Doane,* 51 N. Y. 84; *Stokes* v. *Johnson,* 57 N. Y. 673; *Marks* v. *King,* 64 N. Y. 628; *Platner* v. *Platner,* 78 N. Y. 90; *Miller* v. *Montgomery,* 78 N. Y. 282.) It is not a narration of a personal transaction for the survivor to testify what he knew or saw. (*Hill* v. *Woolsey,* 113 N. Y. 391; *Hard* v. *Ashley,* 117 N. Y. 606; *Hamlin* v. *Stephens,* 59 App. Div. 522.) The refusal of the referee to hear testimony about particular transactions in other securities was not error. (*Rickerson* v. *H. F. Ins. Co.,* 149 N. Y. 307; *Dillon* v. *Anderson,* 43 N. Y. 231; *Steinhardt* v. *Buell,* 1 Misc. Rep. 295; *Peck* v. *D. S. P. & P. Co.,* 164 N. Y. 127; *Thompson* v. *L. A. Co.,* 180 U. S. 72; *Green* v. *Disbrow,* 56 N. Y. 334; *Bonynge* v. *Field,* 81 N. Y. 159; *Lopez* v. *Campbell,* 163 N. Y. 340; *Ruppert* v. *B. H. R. R. Co.,* 154 N. Y. 90; *Bottomley* v. *U. S.,* 1 Story, 135.)

Parker, Ch. J. This controversy directly involves about the sum of $10,000, being the surplus resulting from a sale by the Atlantic Trust Co. of 200 shares of the capital stock of the New York, Lackawanna and Western Railroad Co. held by it as security for a loan made to Joseph Richardson, now deceased, whose personal representatives these plaintiffs are. The defendant Emmett, claiming to be the owner of these shares, demanded such surplus of the Atlantic Trust Co., which company being sued by the plaintiffs for the money, successfully moved the court to substitute the present defendant in its place, as a person claiming the fund.

Upon the trial it appeared that in October, 1882, the N. Y., L. & W. R. R. Co. issued certificates of its stock for 350

shares to Joseph Richardson, which he paid for and owned. Nearly three years later, and on August 21, 1885, Richardson executed a power of attorney, in the usual blank form, indorsed on the back of the original certificates issued to him, which in form sold and assigned to Emily Emmett, this defendant, the shares of stock represented by the respective certificates, and appointed John J. Owen, an attorney in fact, to transfer the stock to her on the company's books. Owen, acting under these powers, caused the old certificates to be canceled and four new certificates for 350 shares, dated August 21, 1885, to be made out in the name of Emily Emmett. On the day following these certificates were handed to Brayton Ives and Co., who were Richardson's stock brokers, and two or three days later they came into Richardson's custody.

Now, Emily Emmett was a niece of Richardson's, and on the death of her parents, when she was about five years old, she went to reside with Richardson and his wife and continued to be a member of his household ever after, although he, having married him another wife toward the close of his life, personally went out of his own house and, with his wife, lived in another house, leaving his daughter and this defendant and another niece to live on in the old home, as they had before.

After the transfer of the stock upon the books of the company to Miss Emmett, a dividend was declared payable on October first and for that dividend, as well as for each succeeding dividend, a check was made out to her by the company, which she indorsed, and then, accompanied by Richardson's daughter, went regularly every quarter to Brayton Ives and Co., Richardson's stock brokers, and delivered to them such checks, who thereupon, in every instance, credited the checks to Joseph Richardson's account.

November 11, 1890, Richardson filled up the power of attorney on the back of each certificate, signing at the end thereof the name, "E. Emmett," which he caused to be witnessed by two witnesses, and on the same day these certifi-

cates of stock were surrendered to the railroad company, which issued new certificates of stock for 350 shares in the name of Mauriac and Bishop, who were then Richardson's stock brokers, which shares were delivered to and held by them as security for his current indebtedness to them.

When the next dividend fell due, Miss Emmett was informed, when she appeared at the office of the company, that there was no dividend for her. Thereupon she told Miss Richardson, who informed her father about it. He said it was all right and that he would give Miss Emmett a note to go and get her dividend, and she says he did write her a letter, which was taken to the Lackawanna Railroad Company's office, requesting the company to pay the dividend due January 1, 1891, to her, which it did, and the testimony was to the effect that this course of business was followed on each subsequent quarterly period down to and including the dividend of April, 1892.

May 6, 1892, Mauriac and Bishop indorsed the certificates standing in their name and surrendered them to the railroad company, which thereupon issued new certificates in the name of Emily Emmett. These new certificates, on or about the date of their issue, were again indorsed by Joseph Richardson, but in the name of " E. Emmett," which he signed to the power of attorney on the back, and these certificates thus indorsed in blank were handed over to Mauriac and Bishop as security for Richardson's account.

In May, 1894, two of these certificates for 100 shares each were lodged by Richardson with the Atlantic Trust Co., as collateral security for a loan, and after his death the stock was sold to settle the balance remaining unpaid on the loan, resulting in the surplus now the subject of controversy.

The learned referee found, in a short form of decision, that the defendant was entitled to recover, and judgment was entered accordingly, which was subsequently unanimously affirmed at the Appellate Division, and the only questions presented on this review are appellants' exceptions taken to the admission and rejection of testimony.

The defendant, while on the witness stand, was shown four stock certificates representing the 350 shares which were issued in the name of Emily Emmett by the direction of Richardson, and attention being particularly called to the date of their issue, August 21, 1885, and the date of the cancellation marks running from November 12 to November 22, 1890, the witness was asked : " Were those certificates at any time between those two dates (August, 1885, and November, 1890) in your possession ? " Plaintiffs objected to the question as incompetent under section 829 of the Code of Civil Procedure, the objection being stated in full. But the objection was over-ruled and an exception taken, whereupon the defendant answered : " Yes, sir." The witness was again asked : " About what date were they in your possession ? " This was followed by the same objection, ruling and exception, and the answer was : " About the autumn of 1885. Q. Where ? " The same objection, ruling and exception followed, and the witness answered : " 110 East Houston street," which was Richardson's home and where the defendant also resided.

This ruling of the learned referee is said to have been based upon the decision of this court in *Simmons* v. *Havens* (101 N. Y. 427), and is claimed to be fully justified by it, although it is quite apparent that very different use was made of the evidence in the case under consideration than the court thought possible in the *Simmons* case. In the latter case the theory of plaintiff's action was that her mother had conveyed to her the real estate upon which both of them resided, and that subsequently her mother, becoming angry, had taken the deed from the bureau drawer where it was kept and destroyed it, and conveyed the real estate to her brother. During the trial, plaintiff, being on the witness stand, testified without objection that Havens " brought the deed to the house and threw it in my mother's lap, and, says he, ' There's Helen's [the witness's] deed, and Mr. Lamport will be down   *   *   *   and take the acknowledgment.' She asked him if he had read the deed, and he said he had, that he felt interested who should have the premises back of him, and he had read the deed and it

27

was all right. I did not read the deed then ; I saw it in mother's possession and his." Then came the question which was considered by the court: "Is it the same paper that subsequently came. into your possession and which you read ?" Defendant objected to the evidence, but it was received and an exception taken. "A. Yes, sir. Q. And the same paper you exhibited to Simmons and John Thompson ? A. Yes, sir." When this court came to a consideration of the question presented by the foregoing exception, it had already, and after a careful review of the testimony, reached the conclusion that the judgment in favor of the plaintiff should be sustained, and the question actually presented was whether this ruling under the circumstances required a reversal of the judgment, and the reasoning of the court in effect was, that no harm had resulted from permitting the witness to state that the deed was in her possession, because as the court said : " She was not asked and did not state from whom she received the deed.   *   *   *   The plaintiff might have received the deed from some third person." The theory of the court was that no harm was done, and, therefore, the judgment should not be reversed, not that the testimony was competent either to prove or to contribute toward establishing the fact of delivery. Such a holding, had it been made, would have seriously impaired the usefulness of section 829 of the Code, but it was neither made nor was it intended, for the argument, all of which I have quoted, tended to show merely that no harm had resulted, and, hence, that a judgment right on the merits should not be interfered with.

That such evidence is not competent proof to establish the fact of delivery appears from the later case of *Clift* v. *Moses* (112 N. Y. 426), in which case it was important for the defendant to show the delivery of the notes to him — just as in this case it was necessary in order to make out a gift to show a delivery of the stock certificates to Miss Emmett — and these questions were asked of Moses : " Have you ever had the notes in suit in your possession ? " " Did you see the notes in suit in November or December, 1875 ? " " Did you see the

notes in the possession of your wife when Mr. Pardee was not present or in your wife's hands when Mr. Pardee was not present?" These questions were objected to and excluded under section 829 of the Code, and this court, in an opinion in support of this position by Judge Andrews, said: "The primary question is whether the evidence sought to be elicited by the questions put to Moses, touching the possession of the notes prior to Pardee's death, was evidence concerning a personal transaction between the witness and Pardee. The evidence was very material upon the issue of payment. If the notes were in the possession of Moses prior to Pardee's death, the presumption of payment would be very strong, and if he saw them in the possession of his wife in 1875 or 1876, or subsequently during Pardee's lifetime, it would be a strong circumstance in corroboration of her testimony. The questions do not on their face call for a disclosure of a personal transaction of the witness with Pardeee; and if it be the true construction of section 829, that a party may be a witness against the representative of a deceased party as to any fact which is not a narrative of an occurrence between the witness and the deceased, or if any fact may be proved by the survivor which does not involve on its face a direct statement of a transaction or communication between himself and the deceased, then the evidence of Moses was improperly excluded. But this literal construction of the section has not been adopted by the courts. It has been held with general uniformity that the section prohibits not only direct testimony of the survivor that a personal transaction did or did not take place, and what did or did not occur between the parties, but also every attempt by indirection to prove the same thing, as by negativing the doing of a particular thing by any other person than the deceased, or by disconnecting a particular fact from its surroundings and permitting the survivor to testify to what on its face may seem an independent fact, when in truth it had its origin in or directly resulted from a personal transaction." By this process of reasoning the court necessarily reached the conclusion that if Moses had posses-

sion of the notes, such possession must have originated in, or resulted directly from a personal transaction with Pardee, and that unless the tendency of the evidence was in that direction it was necessarily immaterial, for it could have no value except in so far as it would tend to support an inference of fact that the notes were delivered to Moses by Pardee.

So in this case, the possession by Miss Emmett of the certificates of stock in the autumn of 1885 had no materiality whatever except for the purpose of establishing a delivery to her of the certificates after they had been issued in her name by the railroad company. And it tended to establish such a delivery and to permit an inference as to the nature of the transaction between her and Richardson when considered in connection with the fact that he had first caused stock which he owned and had paid for to be issued in her name by the railroad company. Under those circumstances testimony by her to the effect that almost immediately afterward she had these certificates in her possession was in its effect testimony of both transaction and communication, as Judge Landon so well said in *Viall* v. *Leavens* (39 Hun, 291) in writing an opinion for the court holding it not permissible for an interested party, the decedent's wife, to testify that a deed made by her husband to a third party was delivered to her by the decedent, and that she retained possession of it, with short intervals, down to the time of the trial. Judge Landon said: " She, therefore, testified ' concerning ' both transaction and communication, though she did not directly say she had either. The fact she spoke of was in no just sense independent of and extrinsic to the personal transaction and communication, but derived its chief significance from its dependence upon and intrinsic connection with both."

The reasoning of Judge Landon in that case as to the necessary effect of such testimony can have no better illustration than this case affords. When the learned referee came to consider whether the evidence established a complete and valid gift of the 350 shares of stock to Miss Emmett by

Richardson, he opened his discussion of the important element of delivery which must be established in such cases in these words: "In the present case the physical delivery of the thing given, being certificates of stock standing in the name of the donee put in her name by the donor, is, in my judgment, sufficiently proved by the evidence that the certificates of stock were in Richardson's possession late in the month of August, and were shortly afterwards in the possession of Miss Emmett. There is no circumstance suggested from which a surreptitious delivery to her could be inferred, or a delivery by any person than by Richardson himself, or some one acting under his instructions." We see, therefore, that the referee regarded this evidence as conclusively establishing the delivery of the stock by Richardson to Miss Emmett.

In the *Simmons Case* (*supra*) the court thought no harm was done by admitting the testimony asserting possession, for the reason that, for aught the evidence disclosed, plaintiff might have received the deed from some other person than the deceased and also because she did not state from whom she received it, while in this case the absence of such proof is laid hold of by the learned referee as tending to support an inference that the delivery to Miss Emmett was not surreptitious and that there was not a delivery to her of the certificates of stock by any other person than Richardson.

There can be little doubt, I take it, assuming, as we must, the evidence to be in the case for all purposes, that the deductions drawn from it by the referee are such as would be drawn by any reasonable man performing the duty of a trier of fact. The learned judge writing for the Appellate Division said, that while probably the possession of these certificates of stock was "competent evidence at the time it was introduced," it "was not evidence from which an inference could be drawn that the testator had delivered the stock to her." (Citing section 829 of the Code; *Clift* v. *Moses, supra*, and *Matter of Humfreville*, 6 App. Div. 536.)

The court was quite right in its view that section 829 of the Code was intended to prohibit a party covered by that

section from testifying to a fact from which the inference must necessarily be drawn of a personal transaction between a testator and the witness, and the authorities cited by that court fully sustain such position, but the flaw in the argument is in assuming that the evidence was competent at the time it was introduced — a flaw due, it is quite evident, to the assumption that the *Simmons* case requires the court to hold the evidence admissible, while the other authorities and the Code burdened it with the necessity of depriving it of all probative force. It was clearly incompetent if it tended to support an inference of a delivery of the stock to Miss Emmett by Richardson, as the referee found it did, and as we think; indeed, it was not material or useful for any other purpose.

Now, while testimony almost identical with this was said not to justify a reversal in the *Simmons Case (supra)*, we think, for the reasons already assigned, that the decision in that case should be confined to situations precisely like the one then before the court. Such, we think, the opinion shows to have been the intention of the court in that case and such intention is further evidenced by a decision of the court made two or three years later in *Clift* v. *Moses (supra)*, in which the opinion in the *Simmons* case was not discussed.

It is perhaps unfortunate that this case must be reversed, but it is better far that it should be than that such a precedent should be created as would result from an affirmance of the judgment.

The judgment should be reversed and a new trial granted, with costs to abide the event.

GRAY, MARTIN, VANN, CULLEN and WERNER, JJ., concur. O'BRIEN, J., absent.

Judgment reversed, etc.