DAVIS v. DAVIS et al. (two cases).

(Supreme Court, Special Term, New York County. January, 1907.)

1. GIFTS—CAUSA MORTIS—EVIDENCE.
   One alleging a gift causa mortis must prove it by convincing, strong, and satisfactory evidence.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Gifts, §§ 154, 155.]

2. SAME—REQUISITES IN GENERAL—EXPECTATION OF DEATH—DELIVERY.
   To establish a gift causa mortis, the donee must show that the gift was made with a view of the donor's death, that the donor died of his then present ailment or peril, and that there was a delivery.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Gifts, §§ 104, 109, 122.]

3. WITNESSES—COMPETENCY—TRANSACTION WITH DECEASED PERSON.
   Where, in an action by an administratrix to recover a bank account claimed by defendant under a gift causa mortis, the evidence showed that decedent had given to defendant the contents of a box, and that after decedent's death defendant received the box, defendant was, under Code Civ. Proc. § 829, prohibiting a party from testifying in his own behalf against an administrator, etc., incompetent to prove the contents of the box and identify the bank books claimed under the gift.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, §§ 582–597.]

4. GIFTS—CAUSA MORTIS—EVIDENCE—SUFFICIENCY.
   Evidence considered, and *held* insufficient to show a gift causa mortis of bank account.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Gifts, §§ 154, 155.]

Separate actions by Carrie C. Davis, administratrix of E. Louise Davison, deceased, against the Citizens' Savings Bank and against

the Seamen's Bank for Savings, in which Emma L. Davis was interpleaded.  Judgment for plaintiff in both actions.

DAVIS, J.  These two actions are brought by Carrie C. Davis, as administratrix of E. Louise Davison, to recover two savings bank deposits standing in the name of plaintiff's intestate in the Citizens' Saving Bank and the Seamen's Bank for Savings, respectively.  They were brought originally against the banks, but later the defendant Emma L. Davis was interpleaded and the bank was taken out as defendant.  They were tried together, and are submitted on the same evidence.  In her answer the defendant sets up a counterclaim alleging that prior to her death E. Louise Davison made her a gift of the two bank accounts.  On the trial the defendant sought to prove a gift causa mortis.  The plaintiff denies that there was a gift, and so the question to be decided is whether there was a valid gift causa mortis from the decedent to the defendant.

The rules to be applied in determining whether there has been a gift causa mortis have been set forth in numerous well-considered cases.  For instance, because of the ease with which fraud can be practiced in cases of this kind, a party alleging a gift causa mortis is required to prove it by convincing, strong, and satisfactory evidence.  Nothing is to be presumed either in favor of or against such a gift.  Devlin v. Bank, 125 N. Y. 756, 26 N. E. 744.  Furthermore, to establish a gift causa mortis, the defendant must show that it was made with a view to donor's death, that the donor died of her present ailment or peril, and that there was a delivery.  Grymes v. Hone, 49 N. Y. 17, 20, 10 Am. Rep. 313; Ridden v. Thrall, 125 N. Y. 572-579, 26 N. E. 627, 11 L. R. A. 684, 21 Am. St. Rep. 758.  Clear and convincing proof of the delivery to the donee of the very property claimed as a gift is absolutely requisite.  In Ridden v. Thrall, supra, the court say:

"* * * The property must be actually delivered and the donor must surrender the possession and dominion thereof to the donee."

In Curry v. Powers, 70 N. Y. 212, 215, 217, 26 Am. Rep. 577, it was held that:

"In order to render a gift valid, causa mortis or inter vivos, the gift must be delivered to the donee, or it must be placed in his power, by delivery of the means of obtaining possession. * * * An absolute gift requires a renunciation by the donor and an acquisition by the donee of all interest in and title to the subject of the gift."

See, also, Beaver v. Beaver, 117 N. Y. 421, 429, 22 N. E. 940, 6 L. R. A. 403, 15 Am. St. Rep. 531, and Gannon v. McGuire, 160 N. Y. 476, 481, 55 N. E. 7, 73 Am. St. Rep. 694.

To establish her claim the defendant called Mrs. Ball, who testified that she knew the deceased and the defendant a great many years, and the plaintiff ever since she was a little girl; that she visited the deceased at her home, No. 137 East Fiftieth street, many times; that during the latter years of her life the decedent spoke of her intention to dispose of her property, sometimes in one way and sometimes in another.  This witness also testified that on August 11, 1902, she was at the house of the decedent; that she remained there that day until the dece-

dent went to the Presbyterian Hospital for an operation; that before she left for the hospital the decedent said that if she passed away she wished the tin box, with its contents, that would be found in her black trunk, to be handed to Mrs. Emma L. Davis (the defendant). The witness remembered seeing this trunk in the apartment, but did not know its contents. On another subsequent occasion the decedent, who was then in the hospital, asked the witness and the janitress, Mrs. Morrow, to go to her apartment and open this trunk and get $30 out of a pocketbook there, and give the money to Mrs. Morrow for the rent. The witness, Mrs. Ball, complied with the request, but did not then notice the contents of the trunk. The decedent died at the hospital September 22, 1902, and on this same day this witness and defendant got the keys of decedent's apartment from the janitress, Mrs. Morrow, to whom they had been given the day decedent went to the hospital, and entered the apartments. Mrs. Ball then opened the trunk, took out a tin box and handed it to the defendant, thus carrying out the wishes of the decedent. Mrs. Ball never saw the contents of the box and did not know what was in it. They remained in the apartments a short time, and on leaving the defendant took possession of the keys. Several days thereafter Mrs. Ball and the defendant returned to these apartments to look for a will. They made an examination of the decedent's effects, but found no will. It also appears from Mrs. Ball's testimony that the conversation between her and decedent on August 11, 1902, took place in decedent's apartments, and within easy reach of the trunk and tin box, and that she did not give the witness the keys of the trunk or of the tin box, but did tell her where to find them.

It cannot be said that this testimony established a gift causa mortis. On the contrary, it negatives the theory of such a gift, because it fails to show a delivery of the subject of the alleged gift by the decedent. Indeed, such delivery is affirmatively disproved by Mrs. Ball's testimony, even if we assume that the bank books were in the tin box at the time of the instructions to Mrs. Ball. We must bear in mind that Mrs. Ball was not to hand over the tin box until after decedent's death. She had no authority even to enter the apartments until that event had happened. The keys of the apartment, by her express direction, were to remain with the janitress, Mrs. Morrow, until after decedent had passed away. In other words, the decedent, through her agent, Mrs. Morrow, retained the possession and dominion over her apartments and their contents up to the last moment. Naturally, had she intended to part with title to and possession of these bank books during her lifetime, she would have delivered the bank books in question to her cousin, Mrs. Ball, at the time of the conversation on August 11, 1902, the day she left for the hospital, or, if not then, later, when Mrs. Ball, at her request, opened the trunk and took out $30 with which to pay rent then due. Instead of doing so, the decedent retained absolute control over the tin box, and showed a clear intention to retain it until her death, after which, only, was it to be delivered to the defendant. Mrs. Ball's testimony possibly may show testamentary intention on the part of the decedent, but it is insufficient to show a gift of these bank books.

Nor does Mrs. Morrow's testimony help the defendant's theory.

This witness says that on the day the decedent went to the hospital she told witness that if anything happened to her she was to hand the keys of the apartment over to the defendant or to Mrs. Ball. She further says that she then gave witness the keys of her apartment. In the latter part of August the witness called at the hospital and found decedent in bed, expecting to be operated upon in a few days. On this occasion decedent also told witness to hand over the key and to see that the defendant got the tin box out of her trunk if anything happened to her. Decedent also said that she did not think she would get out of the hospital alive, if she went under an operation. Witness also states that on one occasion, she cannot tell when, decedent told her that she had given the tin box or the contents of it to the defendant. On this last point the witness was quite unsatisfactory, so much so that it is quite doubtful whether the decedent intended to declare that she had already made and perfected the alleged gift. Certainly, if decedent was referring to the arrangement made with Mrs. Ball as to the disposition of the tin box after her death, she did not intend to assert that she had already perfected the alleged gift, because Mrs. Ball's testimony shows the contrary. In view of the fact that neither Mrs. Ball nor the defendant had access to the tin box up to the death of the decedent, and considering the further fact that decedent retained possession of the box until her death, we naturally conclude that, when she said to Mrs. Morrow that she had given the tin box to the defendant, she meant nothing more than that she had concluded that defendant should have it after her death. A person who had executed a will might use similar words in referring to a legatee named in his will; but it would be an expression of a testamentary intention merely. Mrs. Morrow's testimony as to her custody of decedent's keys and her delivery of them to the defendant after decedent's death serves only to strengthen the conclusion that up to her death decedent retained possession and title to the bank books in question. Defendant's cousin, Mary L. Conklin, was called by the defendant, and testified that in July, 1902, decedent told her that she had quarreled with her relations about money, and that the defendant was to have all that she had that was of any value. This testimony is of no value as proof of a gift causa mortis or inter vivos. It merely shows a testamentary intention favoring the defendant. None of the witnesses who gave testimony in support of defendant's claim of a gift had any knowledge of the contents of the tin box.

A short time after decedent's death the defendant received the tin box from the witness Ball. The subsequent history of the box is told by the defendant and her brother, Alfred R. Davison. Mr. Davison testified that he lives with his sister, the defendant; that about 6 o'clock p. m. on the day of decedent's death the defendant opened the tin box in his presence at their home in Brooklyn, and that in it were four bank books and some jewelry. This witness did not identify the bank books. The defendant was then called to prove the contents of the box, and to identify the bank books, the subject of the alleged gift. Her attention having been called to the opening of the box, as testified to by her brother, she was then asked to describe in detail the contents

of the box. The question was objected to by the plaintiff on the ground that the witness was incompetent under section 829 of the Code. By consent of counsel the question was answered, the court reserving its decision, with the understanding that an exception should be noted on the record in favor of the party against whom the court should finally rule on the objection. A review of the authorities leads to the conclusion that the defendant was incompetent under section 829, and that plaintiff's objection to the question must be sustained and the testimony struck out. Defendant claims that the bank books were given to her as a gift by the decedent. The identity of the gift depends upon the testimony of the defendant. The question of what specific property was given by the decedent is answered by the defendant alone; and the decedent, were she alive, could deny or modify defendant's statement on this point. Defendant's possession of the books was derived from the decedent. It was none the less derived from the decedent because they were handed over to her by Mrs. Ball after the decedent had died. "Possession of a thing derived from another is a personal transaction with the person from whom the possession was derived." Clift v. Moses, 112 N. Y. 426, 434, 20 N. E. 392. Therefore defendant's testimony as to her possession of these books would be in effect testimony regarding a personal transaction in which she and the decedent were chiefly concerned. Richardson v. Emmett, 170 N. Y. 412, 63 N. E. 440; O'Connor v. Ogdensburg Bank, 51 App. Div. 70, 64 N. Y. Supp. 501.

With the defendant's testimony on this point eliminated from the case, there is no satisfactory proof of a delivery of the subject of the alleged gift. But, even it the defendant's testimony were allowed to remain in the case, the court would not be justified in finding that these very books were in the tin box at the time decedent said that she wanted defendant to have them if anything happened to her. Such a finding would rest solely upon the testimony of the defendant and her brother, both of whom have a very deep interest in establishing the alleged gift. The brother did not see the contents of the box until several hours after it came into possession of the defendant. The defendant had possession of the box and access to the apartments of the decedent for several hours before she opened it in the presence of her brother. In these circumstances the proofs of the defendant are unsatisfactory and unconvincing, and should not avail to turn over nearly all of decedent's estate to a party related to her by marriage only, to the detriment of the blood relations. Some evidence was given as to the existence of bad feeling between the decedent and these blood relations. But I think this contention was fairly overcome by plaintiff's testimony. While of recent years there had been but little intimacy between the decedent and her nieces, because the latter were living away from New York City, I think the evidence as a whole fails to establish any serious antagonism between them.

There should be judgment for the plaintiff in both actions, directing the payment of the money on deposit to the plaintiff, and dismissing the defendant's counterclaim, with costs.