(77 Misc. Rep. 507.)

## In re BROWN'S ESTATE.

(Surrogate's Court, Cattaraugus County.   August, 1912.)

1. WITNESSES (§ 159*)—COMPETENCY—TRANSACTIONS WITH PERSONS SINCE DECEASED.

   Where it is established, on the hearing of a personal claim of an executrix for sums alleged to have been collected by the testator, that either the decedent or the claimant, his widow, received the fund, a question to claimant, whether she had any of the payments, is prohibited by Code Civ. Proc. § 829.

   [Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 629, 664, 666–669, 671–682; Dec. Dig. § 159.*]

2. EXECUTORS AND ADMINISTRATORS (§ 176*)—ALLOWANCES TO WIDOW—MAINTENANCE DURING QUARANTINE.

   Under Real Property Law (Consol. Laws 1909, c. 50) § 204, a widow is entitled to reimbursement of sums expended by her for reasonable support and maintenance during her quarantine.

   [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 655, 661–666; Dec. Dig. § 176.*]

3. EXECUTORS AND ADMINISTRATORS (§ 213*)—CLAIMS AGAINST ESTATE—LIMITATIONS.

   Where land owned by the widow and executrix of testator was used for 16 years before his death for pasture in connection with his farm, the rent therefor became due at the end of each pasturing season, and the widow was entitled to recover only for the 6 years immediately preceding his death, being bound as executrix to plead limitations as a defense to the claim for rent accruing before that time.

   [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 749–753; Dec. Dig. § 213.*]

4. ACTION (§ 11*)—CLAIMS AGAINST ESTATE—CONDITIONS PRECEDENT—DEMAND.

   A testator having failed to pay to his wife moneys collected upon her bonds and mortgages, she was entitled to enforce payment therefor without a precedent demand.

   [Ed. Note.—For other cases, see Action, Cent. Dig. §§ 53–75; Dec. Dig. § 11.*]

5. EXECUTORS AND ADMINISTRATORS (§ 213*)—LIMITATIONS APPLICABLE—CLAIM BY EXECUTRIX.

   Claims of an executrix against the estate of the testator, which matured more than six years before his death, and on which no action was commenced within that period, are barred by limitations.

   [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 749–753; Dec. Dig. § 213.*]

6. EXECUTORS AND ADMINISTRATORS (§ 221*)—CLAIMS AGAINST ESTATE—EVIDENCE.

   That bonds and mortgages running to an executrix and paid by checks of the mortgagors were indorsed first by the executrix, then by the decedent, and on their face bore the paid stamp of the bank, does not establish that decedent became obligated to the claimant to the amount of the checks.

   [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 901–903½, 1858, 1861–1863, 1865, 1866, 1871, 1874, 1876; Dec. Dig. § 221.*]

7. EXECUTORS AND ADMINISTRATORS (§ 221*)—CLAIMS AGAINST ESTATE—EVIDENCE.

   Where the indorsements of both executrix and decedent on certain checks given by a mortgagor for payments on his bond and mortgage to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the executrix were in the handwriting of the decedent, and each check bore the bank's paid stamp, and it is not shown that the executrix ever had possession of the checks, or authorized decedent to indorse them for her, or parted with title to the money, her claim for the amount thereof will be allowed against his estate.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 901–903½, 1858, 1861–1863, 1865, 1866, 1871, 1874, 1876; Dec. Dig. § 221.*]

Judicial settlement and proof of personal claim of the executrix of George M. Brown, deceased.   Decree entered.

Frank J. Shaffer and Henry Donnely, both of Olean, for executor. M. B. Jewell, of Olean, for executrix and claimant.

DAVIE, S.  The only controversy upon this accounting relates to the personal claim of the executrix, Mary E. Brown.  The administration of this estate, consisting of property of the value of nearly $200,000, has received such careful attention that no objections are filed by any of the interested parties to any item of the account presented for judicial settlement.  The executrix, Mary E. Brown, is the widow of the testator, and presents a personal claim against the estate, portions of which are strenuously contested.  Her demand consists in part of various sums alleged to have been collected by the testator upon bonds and mortgages owned by the claimant and for which he had never accounted to her.

[1] The first question for determination relates to certain evidence objected to upon the trial, and taken conditionally, with the right reserved to strike the same from the record, if upon investigation it should be ascertained that such evidence was inadmissible.  The proof shows that various payments were made upon these bonds and mortgages, usually at the residence of the testator, in his presence and that of the claimant.  All of these payments are indorsed upon the bonds in the handwriting of the claimant, but the evidence fails to disclose the other circumstances attending the various transactions, and it is left very much to inference as to which one of the parties actually received the moneys paid.  After the mortgagors had been called and testified to the fact of making the several payments, the claimant was called as a witness on her own behalf.  Her attention was called to what the other witnesses had testified to and to the various indorsements upon the bonds, and she was then asked the following question: "Did you have any of these payments?"  This question was objected to, upon the ground that the witness was incompetent under the provisions of section 829 of the Code; such objection being sufficiently specific to fully raise the question of incompetency.  The evidence was thereupon conditionally taken as above stated, and the witness answered, "No, sir."  This same question substantially was repeated several times during the trial, with the same objection and same answer, and under the same conditions.

Careful consideration shows that these various questions and answers were improper, and that the witness was incompetent to testify

to the fact involved therein, and the several answers to the questions so objected to should be stricken from the record and not considered in the disposition of this controversy. The fact being established that either the claimant or decedent had received these moneys, asking her the question, "Did you have any of these payments?" was equivalent in purpose and effect to asking her, "Did your husband have these moneys?" It directly relates to a personal transaction between herself and the testator, and is prohibited by the provisions of section 829 of the Code. Moses v. Hatch, 38 App. Div. 140, 56 N. Y. Supp. 561; Mulqueen v. Duffy, 6 Hun, 299; Walsh v. McArdle, 78 Hun, 411, 29 N. Y. Supp. 169; Brayman v. Stephens, 79 Hun, 28, 29 N. Y. Supp. 526; Myers v. Hunt, 14 N. Y. Supp. 471; Haughey v. Wright, 12 Hun, 179; Hill v. Heermans, 17 Hun, 470.

In the case last cited the action was brought to recover certain bonds deposited by plaintiff (with indorsement in blank thereon) with the deceased assignor of the defendant. When such bonds were produced on the trial, the name of defendant's assignor was written in the blank. The plaintiff was permitted to testify under objection that he never transferred the bonds and never saw them after deposit. This evidence, upon appeal, was held inadmissible.

In Clift v. Moses, 112 N. Y. 426, 435, 20 N. E. 392, 395, Judge Andrews says:

"It has been held with general uniformity that the section prohibits, not only direct testimony of the survivor that a personal transaction did or did not take place, and what did or did not occur between the parties, but also every attempt by indirection to prove the same thing, as by negativing the doing of a particular thing by any other person than the deceased, or by disconnecting a particular fact from its surroundings and permitting the survivor to testify to what on its face may seem an independent fact, when in truth it had its origin in or directly resulted from a personal transaction."

This case is cited with approval in Richardson v. Emmett, 170 N. Y. 412, 63 N. E. 440, and Griswold v. Hart, 205 N. Y. 384, 98 N. E. 918. Accordingly, all the testimony of the claimant of the character indicated will be stricken out, with an exception in each instance to the claimant, and a memorandum of such evidence so eliminated will be attached to the stenographer's minutes of the evidence now on file.

A portion of the widow's claim is satisfactorily established. No serious controversy exists relative to that part of the claim which is based upon the promissory notes of the decedent, one dated February 15, 1908, for $850, and one dated May 13, 1908, for $300. The entire amount of the first-mentioned note, principal and interest, and the sum of $203.69, principal and accrued interest, on the other, remain unpaid, and the claimant is entitled to recover the same from the estate.

[2] The evidence shows that during the widow's quarantine, or the 40 days immediately following her husband's death, she supported and maintained herself, and in that connection expended the sum of $119.-89 for her reasonable sustenance. She is entitled to be reimbursed for such expenditure from the funds of the estate. Real Prop. Law (Consol. Laws 1909, ch. 50), § 204.

[3] The claimant is the owner of 25 acres of land in the town of Hinsdale, adjoining or near a farm of the decedent, and operated by

his tenant for dairying purposes. During the 16 years immediately preceding decedent's death these 25 acres were used in connection with the farm for pasture; the use thereof being fairly worth the sum of $40 a season. It does not appear that any agreement was ever made between the parties regulating the time of payment of such rent. It accordingly became due, year after year, and at the end of the pasturing season. More than 6 years had elapsed prior to decedent's death after the claimant's right of action had accrued to recover for all rent prior to the year 1904. That portion of her claim is, therefore, barred by the statute. She is entitled to recover for the use of said premises at the rate of $40 per season from 1904 to 1910, inclusive, but for no longer term. It was not only the right, but the positive duty, of the other executor to interpose the defense of the statute. Bloodgood v. Bruen, 8 N. Y. 362; Butler v. Johnson, 111 N. Y. 204, 18 N. E. 643.

The more strenuous controversy relates to the efforts of the claimant to recover from the estate the moneys alleged to have been collected by the decedent upon claimant's bonds and mortgages and not paid over to her. As there were many payments made by the mortgagors and indorsed upon the bonds, and which are the subject of controversy between claimant and the estate, it will be impossible to refer to each in detail in this memorandum. Only such particular transactions will be considered as, in consequence of their similarity to other transactions, will form a guide for the disposition of all matters in controversy in this connection.

[4] One of such indorsements upon the bonds in claimant's handwriting, under date of February 11, 1902, of $168 on principal and $40.50 on interest, arose out of the following facts: The amount represented by such indorsement was paid to the decedent by the mortgagor wintering stock for him. This bond bears another indorsement under date of January 29, 1904, of $169.80. This payment was made under the following circumstances: The decedent had previously sold the mortgagor a quantity of cattle. On the date of the indorsement the mortgagor went to the residence of the decedent, and in his presence and that of the claimant settled and paid for the cattle, and after doing so had left said sum of $169.80, which he then paid over and directed the same to be indorsed upon the bond. It does not appear to whom this money was actually paid or delivered—whether to decedent or the claimant. In the same connection the claimant prepared and delivered to the mortgagor a receipt in the following form; all thereof, including the signature, being in claimant's handwriting:

"January 29, 1904.

"Received of W. W. Briggs one hundred sixty-nine dollars and eighty cents to apply on the mortgage of real estate.          George M. Brown."

Such receipt was written and delivered in the immediate presence of the decedent and with full knowledge on his part as to the form and contents thereof. It was the same in effect as if he had written and signed the receipt himself. It is an admission upon his part that he received these moneys. Such moneys, belonging to the claimant, having been paid to him, it was his duty to immediately deliver the

same to claimant, and, not having done so—and there is no claim or suggestion that he did so pay over the same—he became indebted to the claimant therefor, and the claimant thereupon acquired a right of action against him to enforce such payment. No demand was necessary as a condition precedent to right of action. Where money belonging to one comes into the hands of another under such circumstances that it is the duty of the latter to pay it over, an action may be maintained therefor without any demand. Baker v. Moore, 4 App. Div. 234, 38 N. Y. Supp. 559; Hickok v. Hickok, 13 Barb. 632; Stacy v. Graham, 14 N. Y. 492; Matter of Cole, 34 Hun, 320; Diefenthaler v. Mayor, 111 N. Y. 331, 19 N. E. 48; Mills v. Mills, 115 N. Y. 80, 21 N. E. 714; Wood v. Young, 141 N. Y. 211, 217, 36 N. E. 193.

[5] The causes of action arising out of the two transactions referred to having matured more than six years prior to decedent's death, and claimant not having seen fit to bring any action within that period to enforce the same, they became fully barred by the statute, and the claim cannot now be enforced against the estate.

There are two other classes of transactions disclosed by the evidence, clearly differentiated by their own peculiar circumstances, and in which the question of the statute of limitations is not involved, which call for consideration.

[6] In various instances payments were made upon these bonds and mortgages by the checks of the mortgagors, payable to the order of the claimant, and by her indorsed upon the bonds. Such payments were usually made at the residence of the claimant, and in her presence and that of decedent. The details of the various transactions are not disclosed by the proof; but the checks, being produced upon the trial, bear, first, the indorsement of the claimant, and, next, that of the decedent, and upon their face the paid stamp of the bank. It is urged on behalf of the claimant that the fact that the decedent was the last indorser upon these checks prima facie establishes the fact that he received the money on the same and thereby became obligated to the claimant to the extent thereof. Such contention cannot be maintained. Even assuming that decedent received from the bank the proceeds of these checks, that is not sufficient to charge him with liability to the claimant therefor. When claimant indorsed the checks and delivered the same to the decedent so indorsed, the presumption is that she did so for the purpose of transferring to him the moneys thereby represented, and that she so transferred the same because he was legally entitled to them. It has been held that proof of the mere fact of payment of money by one person to another is not sufficient to maintain an action therefor. When one delivers a sum of money to another, if there is nothing else to explain the transaction, the legal presumption is that the money belonged to the one who received it, and not that he thereby became the debtor of the other. Bogert v. Morse, 1 N. Y. 377; Manchester v. Braedner, 107 N. Y. 346, 14 N. E. 405, 1 Am. St. Rep. 829; Welch v. Seaborn, 1 Stark. 385; Matter of Delaney, 27 Misc. Rep. 398, 58 N. Y. Supp. 924.

That portion of the claimant's demand based upon transactions of

the character last described, all of which are particularly pointed out in the findings of fact herein, is disallowed.

[7] The mortgagor Heath executed the following checks for payments upon the bond and mortgage given by him; each of such checks being payable to the order of the claimant: One dated January 7, 1910, for $34; one dated the same day for $67; and one dated July 7, 1910, for $402. It does not appear to whom these checks were delivered. They are each produced upon the trial, and bear the indorsement of the claimant and decedent; but both indorsements are in the handwriting of the decedent, and each bears the bank's paid stamp. The evidence does not disclose that claimant ever had the possession of these checks, or that she ever authorized the decedent to indorse her name upon either of them, or that she ever parted with title to the moneys thereby represented. The fact that decedent in his own handwriting has indorsed her name as well as his own upon the back of the checks shows they came into his possession, and, failing to show that he ever acquired title thereto as against the claimant, his estate is liable to the claimant for the amount represented by the checks, and her claim to that extent is allowed.

The particular items allowed and disallowed, together with the circumstances upon which they each depend, are pointed out in the findings of fact submitted herewith, and need not be further referred to.

A decree will be entered in accordance with such findings and conclusions of law based thereon.

Decreed accordingly.